431 So.2d 849 (1983)
Carolyn Sue PHILLIPS, Individually and in her Capacity as Natural Tutrix of the Minor Children, Travis Earl and Tarron PHILLIPS, Plaintiff-Appellant,
v.
William Glen ROY et al., Defendants-Appellees.
No. 15308-CA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
*850 Edward Larvadain, Jr., Alexandria, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for defendants-appellees.
Before PRICE, FRED W. JONES, Jr., and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
This wrongful death action was instituted by the widow and children of Earl Phillips who was allegedly fatally shot by William Glen Roy, a mental incompetent, with a weapon purchased from Gibson's, Inc. Named as defendants were Roy; Gibson's, Inc. ("Gibson's") and its insurer, Sentry Insurance Company ("Sentry"); and the State of Louisiana.
The petition alleged that Roy, a resident of Winnfield where the homicide occurred, had a history of mental illness, having been institutionalized in Central Louisiana State Hospital at least five times since 1968. It further asserted that Gibson's employee was negligent in selling the murder weapon (a .357 Magnum pistol) to Roy because the salesperson either knew or should have known that Roy was mentally incompetent, and also in failing to have Roy properly execute Treasury Form 4473 (U.S. Firearms Transaction Record) prior to the sale.
Third party demands were made by Gibson's and Sentry against the State and by the State against Gibson's and Sentry.
Gibson's and Sentry filed a motion for summary judgment directed both at the main demand and the State's third party demand, attaching thereto depositions of Mrs. Laurice Carpenter (Gibson's employee who sold the pistol to Roy), Mrs. Lillian Roy (Roy's mother) and Tawana Roy (Roy's 16 year old daughter).
Plaintiffs filed an affidavit in opposition to the motion for summary judgment, which included the following allegation by the victim's wife:
"That had Mrs. Laurice Carpenter not filled out Section A of the firearm transaction *851 record, William Glen Roy never would have been able to purchase the gun and ammunition he used to kill affiant's husband because mentally he was so deranged he could not have answered the questions."
After a hearing on the motion for summary judgment and after reviewing the described depositions, the trial court in written reasons for judgment concluded:
(1) Mrs. Carpenter did not know Roy and there was nothing about his conduct or appearance "to put her on notice that he had been a patient at a mental hospital or that there was any danger in selling him a pistol." Consequently, Gibson's employee was free of negligence.
(2) Mrs. Carpenter's completion of a portion of the Federal Firearms Transaction Record (despite instructions on the form that the buyer fill out this section) did not constitute the "cause in fact" of the harm or injury in this case. Frank v. Pitre, [La.] 353 So.2d 1293.[*]
Appellants contend the trial judge erred in finding the holding of Frank applicable to this case.
The granting of a motion for summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits filed, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. Art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
The burden of showing that there is not a genuine issue of material fact in dispute is upon the mover for summary judgment. Any doubt is resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts. Chaisson v. Domingue, supra; Andrew Development Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977).
Summary judgment is not to be used as a substitute for a full trial of a controverted factual issue which is material to the decision of the case. The likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for rendering a summary judgment. Adams v. Travelers Insurance Co., 420 So.2d 507 (La. App. 2d Cir., 1982); Rougeau v. Sears, Roebuck & Co., 383 So.2d 141 (La.App. 3rd Cir.1980).
Guided by these legal tenets, we turn to the questions raised by this appeal.
First, after considering the material submitted in connection with the motion for summary judgment, does there remain a genuine issue as to a material fact?
With reference to the asserted liability of Gibson's and Sentry, two material fact allegations were made. One contention was that the Gibson's employee who sold Roy the murder weapon when Gibson's opened for business at 9:00 o'clock on the morning of February 27, 1979 either knew or should have known that Roy was mentally incompetent.
In her deposition (taken on March 2, 1981) Mrs. Carpenter denied having previously known Roy or ever having heard of his mental problems. Further, she stated that neither his appearance nor conduct gave any indication of mental instability. However, Mrs. Carpenter conceded that she had been given no special instructions by her employer on this subject nor any elementary training concerning manifestations of mental incompetence. In fact, she candidly asserted that if the buyer simply gave appropriate negative answers to certain questions listed on Form 4473 he could purchase a weapon from her at Gibson's store in Winnfield.
*852 In their depositions (also taken on March 2, 1981) both Roy's minor daughter and mother stated that he appeared (by physical demeanor and conduct) to be mentally disturbed when he left home at about 7:15 o'clock on the morning of the shooting incident.
Tawana Roy said that her father was yelling and cursing, and insisted that her puppy dog be killed simply because it was black. Later that morning the youngster attempted to contact a friend on the Winnfield police force to look for Roy. Tawana believed that anyone who observed her father on the morning of the homicide would have concluded there was something wrong with him.
Roy's mother gave a history of her son's persistent bouts with mental illness over the past number of years, resulting in his institutionalization at Central Louisiana State Hospital on five separate occasions. Mrs. Roy asserted that this fact was widely known in Winnfield and, specifically, that the owner of Gibson's was aware of it.
Mrs. Roy said that on the morning of February 27, 1979, just a couple of hours before her son purchased the weapon from Gibson's, Roy's mind was obviously "drifting". Her concern was so pronounced that she telephoned a local judge to request confinement of her son in jail pending another commitment to Central Louisiana State Hospital.
In view of this deposition testimony, offered in support of the motion for summary judgment, contrary to the finding of the trial judge we deem that a material fact remains at issuewas Roy's demeanor and conduct when he purchased the pistol such that the salesperson should have been alerted to his mental incompetence?
The second material fact allegationthat Mrs. Carpenter filled out a section of Form 4473 which the purchaser himself was supposed to completewas established by the deposition of Mrs. Carpenter and recognized by the trial judge. He found, however, that this dereliction on the part of the salesperson was not a "cause-in-fact" of the homicide.
This brings us to the next critical question posed by this appealwere the movers for a summary judgment entitled to that judgment as a matter of law after (1) accepting as a fact that Mrs. Carpenter did not have Form 4473 properly executed and (2) giving plaintiffs the benefit of the doubt and assuming that Roy's appearance and conduct when he purchased the murder weapon should have alerted a reasonable person to his mental incompetence. In other words, would Mrs. Carpenter's actions or inactions have been a "legal cause" of the homicide in question and, consequently, rendered her employer liable? If not, Gibson's and Sentry were entitled to summary judgment as a matter of law. See Sanders v. Hercules Sheet Metal, supra.
Employing the well-recognized duty/risk analysis, our first inquiry is what was Mrs. Carpenter's duty with reference to the sale of this weapon? In view of the dangerous instrumentality involved and its demonstrated potential for harm, the answer seems obviousto carefully observe the customer for any indication of incompetence and to refrain from selling a weapon to an individual manifesting signs of instability.
Public interest in the imposition and delineation of this duty was underlined in the passage by Congress of the Gun Control Act of 1968. 18 U.S.C.A. Sec. 922(d) provides in part:
"It shall be unlawful for any ... licensed dealer ... to sell ... any firearm... to any person knowing or having reasonable cause to believe that such person... has been adjudicated as a mental defective or has been committed to any mental institution."
As the U.S. Supreme Court observed in Huddleston v. U.S., 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974):
"When Congress enacted the provisions... it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest.... Congress determined that the *853 ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States.... The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping `firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency'."
To implement this legislation the U.S. Government requires in connection with every firearms sale by a licensed dealer that Treasury Form 4473, entitled "Firearms Transaction Record", be completed. That form expressly provides that Section A (asking for personal information from the buyer) must be completed personally by the buyer. One question is: "Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution?"
Since a lay person would not have the expertise to make any precise determination as to the mental competence of a prospective weapon purchaser, a commonsense approach to this problem appears to be the only practical one. As a minimum, the salesperson should spend a reasonable time in observing the customer, watching carefully for any signs of mental disturbance or instability which would tend to alert the average individual to the possibility of problems in this area and which would require some further inquiry, including consultation with one's superiors in the business establishment. Further, compliance with U.S. Treasury instructions with reference to having the prospective purchaser personally complete a specified section of Form 4473 would give the salesperson an added opportunity to test the customer's ability to deal with that simple taskand observe any indications of mental deviance.
Having spelled out the duty of Mrs. Carpenter in this situation, we advert to the question of whether that duty was breachedbased upon the recited established and assumed facts. Our answer is in the affirmative. Selling a firearm to an individual who displayed signs of mental incompetence would without question constitute a breach of the general duty. Failure to have the applicant complete Form 4473 as required by federal regulations is a breach of the duty created by those rules.
This brings us to the more difficult question. Having established the breach of a duty, would that breach be a "legal cause" of the homicide? To put it another way, does the duty encompass acts of this nature i.e., the killing of a third person by the mental incompetent to whom the weapon was sold? The answer to that question hinges upon whether the salesperson who breached the duty should have reasonably foreseen this tragic consequence.
We also answer this in the affirmative. Suppose Roy had stepped outside the Gibson's store immediately after purchasing the gun and committed suicide? Is there any doubt that the salesperson who sold a weapon to a mental incompetent should have reasonably foreseen this possibility? The answer is obvious. Then, considering the recognized unpredictability and dangerous propensities of the mentally ill, extending that foreseeability to the likelihood of injury to a third person appears to be logical. Therefore, that breach of duty would be a "legal cause" of the injury to the third person.
For the sake of clarity and to provide guidance for further proceedings, we do not hold that the mere failure of Mrs. Carpenter to have Roy properly complete Form 4473 was, in itself, a "legal cause" of the homicide. This instead, is a factor to be considered along with other evidence to determine whether the salesperson should have recognized that Roy was mentally incompetent at the time of the sale of the pistol and ammunition. If so, the thrust of this opinion is to explain that this breach of her duty was a "legal cause" of the homicide and would render her employer liable.
For these reasons, Gibson's and Sentry were not entitled to a summary judgment as a matter of law. Therefore, we reverse the judgment of the district court sustaining the motion for summary judgment; *854 overrule the motion for summary judgment; and remand the case to the district court for further proceedings consistent with this opinion. Costs of appeal are assessed to the appellees.
NOTES
[*] In this case the plaintiff filed suit against a jail custodian for personal injuries sustained when shot by a prisoner "on leave" from the jail. In a ruling adverse to plaintiff, the court found there was not "sufficient causation between the negligence and the injury to case the defendant." For reasons explained in the body of this opinion, we do not find this case dispositive of the issues in the case under consideration.