**In re Sue ANTROBUS and Ken Antrobus, Petitioners.**

No. 08–4002.

United States Court of Appeals, Tenth Circuit.

March 14, 2008.

Brigida Benitez, Jason Metha, P. Davis Oliver, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Rebecca C. Hyde, Gregory G. Skordas, Skordas, Caston & Hyde, Salt Lake City, UT, Paul G. Cassell, for Petitioners.

Sue Antrobus, Salt Lake City, UT, pro se.

Before HARTZ, TYMKOVICH, and GORSUCH, Circuit Judges.

**ORDER**

This is an original proceeding in the nature of mandamus under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3). Sue and Ken Antrobus, the parents of Vanessa Quinn, request that Ms. Quinn be recognized as a victim of Mackenzie Glade Hunter's crime of transferring a handgun to a juvenile in violation of 18 U.S.C. § 922(x)(1). Mr. Hunter is scheduled to be sentenced on Monday, January 14, 2008.

## I

On February 12, 2007, Sulejman Talovic murdered five people, including Ms. Quinn, and injured four others at the Trolley Square Shopping Center in Salt Lake City, Utah. One of the guns Talovic used in his rampage was a handgun that he had purchased from Mr. Hunter in the summer of 2006, when Talovic was a "juvenile" as defined in § 922(x). Talovic was killed on the scene.

Mr. Hunter pleaded guilty to two charges. Only one count, that of transferring a handgun to a juvenile, is relevant to this action. After the plea hearing, the Antrobuses sought to have Ms. Quinn declared a victim of Mr. Hunter's crime so that they, on her behalf, could assert certain rights provided by the CVRA. *See* 18 U.S.C. § 3771(a)(4) (establishing "[t]he right to be reasonably heard" at the sentencing); *id.* § 3771(d)(6) (establishing "[t]he right to full and timely restitution as provided in law"). The district court denied the motion. *United States v. Hunter*, No. 2:07CR307DAK, 2008 WL 53125 (D.Utah Jan. 3, 2008). In doing so, it proceeded on the basis that the handgun sold by Mr. Hunter killed Ms. Quinn, *id.* at *1, though Mr. Hunter asserts before us that this fact is not discernible from the record of this case. The district court also indicated that other allegations were unsupported, particularly whether Talovic remarked to Mr. Hunter or in Mr. Hunter's hearing that he intended to commit a bank robbery, but stated that its ruling would not change even assuming such facts. *Id.* at *4.

As permitted by the CVRA, 18 U.S.C. § 3771(d)(3), the Antrobuses filed a petition for a writ of mandamus seeking review of the district court's decision. Pursuant to this court's order, Mr. Hunter filed a response.

## II

### *Standard of Review*

■ The Supreme Court has made it clear that mandamus is a "drastic" remedy that is "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam). "[T]he writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Id.* at 35 (quotations omitted). Petitioners must show that their right to the writ is "clear and indisputable." *Id.* (quotations omitted).

The Antrobuses argue that, even though the CVRA provides for mandamus review, this court should apply those standards that would apply on normal appellate review. *See In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 562–63 (2d Cir. 2005); *Kenna v. U.S. Dist. Ct.*, 435 F.3d 1011, 1017 (9th Cir.2006). We respectfully disagree, however, with the decisions of our sister circuit courts.

■ Congress could have drafted the CVRA to provide for "immediate appellate review" or "interlocutory appellate review," something it has done many times. Instead, it authorized and made use of the term "mandamus."

[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

*Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

Mandamus is the subject of longstanding judicial precedent. "We assume that Congress knows the law and legislates in light of federal court precedent." *Bd. of County Comm'rs v. U.S. E.E.O.C.*, 405 F.3d 840, 845 (10th Cir.2005). Applying the plain language of the statute, we review this CVRA matter under traditional mandamus standards.

*Analysis*

The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e). While acknowledging that Ms. Quinn undeniably was a crime victim, the district court held that she was not a victim of the particular crime to which Mr. Hunter pleaded guilty because Mr. Hunter's offense and Talovic's rampage were "too factually and temporally attenuated." *Hunter*, 2008 WL 53125, at *4. Following the rationale of *United States v. Sharp*, 463 F.Supp.2d 556 (E.D.Va.2006), the district court determined that Talovic's actions were an "independent, intervening cause" of Ms. Quinn's death. *Id.* at *5.

■ This is a difficult case, but we cannot say that the district court was clearly wrong in its conclusion. The only court that has decided an analogous case under the CVRA held that the movant was not a "crime victim" under that statute. *See Sharp*, 463 F.Supp.2d 556. Based on its factual finding that Mr. Hunter was un-

aware of Talovic's intentions for the firearm,[1] to find for the Antrobuses we would have to determine that selling a gun to a minor is the proximate cause of any resulting injury to third persons. This area of the law, however, is not well-developed and is evolving. While authority is mixed in the common law context, some courts have held as a matter of law that proximate cause does not exist between a sale of a firearm to a person statutorily disqualified from making the purchase and later injuries to a third person through use of the firearm. *See, e.g., Robinson v. Howard Bros. of Jackson, Inc.*, 372 So.2d 1074, 1076 (Miss.1979). Others have held that proximate cause can be found in some such circumstances but may not (as would be required here) be found on a *per se* basis. *See, e.g., Olson v. Ratzel*, 89 Wis.2d 227, 278 N.W.2d 238, 250, 249–51 (1979); *Phillips v. Roy*, 431 So.2d 849, 853 (La.Ct.App. 1983). Such questions have not yet been decided in this jurisdiction. Finally, at most the statute Mr. Hunter violated indicates the foreseeability of the foolish (or, sadly, as here, worse) use of firearms by juveniles. But such foreseeability does not obviously extend to an individual who employs a gun only after becoming an adult as a matter of law. And here, the Antrobuses have not shown that Talovic was still a juvenile when he committed the murders more than seven months after purchasing the handgun from Mr. Hunter. *See* 18 U.S.C. § 922(x)(5) (defining juvenile as a "person who is less than 18 years of age").

---

1. "Even at the time the gun was sold, Hunter had no knowledge as to Talovic's intentions. And, after the gun was sold, Hunter had no contact with Talovic." *Hunter*, 2008 WL 53125, at *4; *see also id.* at *5 ("[T]here is no indication that he spoke to Talovic about his intentions. At most, Hunter surmised that Talovic might use [the gun] to rob a bank."). One might question whether, with additional discovery, the Antrobuses might have been able to determine whether, in fact, Mr. Hunt-

er knew about Talovic's intentions and what such knowledge might mean for the foreseeability to Mr. Hunter of Talovic's crimes. However, petitioners have not sought mandamus on the basis that the district court should have afforded them such discovery. Accordingly, the issue is not before us and we must take as true the district court's finding that Mr. Hunter was not aware of Talovic's intentions.

In light of these circumstances, we cannot say that the Antrobuses' right to the writ is "clear and indisputable." *Allied Chem. Corp.*, 449 U.S. at 35, 101 S.Ct. 188 (quotations omitted).

## III

The Antrobuses' motion to proceed in forma pauperis is GRANTED. Their Motion to Strike Anticipated Defense Objection to Petition for Writ of Mandamus and Renewed Motion to Strike Defense Objection are DENIED. Their alternative motion for leave to supplement the record is GRANTED and their proffered exhibit is accepted for filing under seal. Their alternative motion for order directing the government to supplement the record is DENIED. Mr. Hunter's motion to unseal the portions of his presentence report that were submitted as Exhibit D to his response is GRANTED. The petition for a writ of mandamus is DENIED.

TYMKOVICH, Circuit Judge, concurring.

We live in a post-Columbine High School massacre world. In that world, juveniles are willing to procure guns and use them to commit violent, horrific crimes. In this case, the previously unthinkable act of random killing took place in a mall in Salt Lake City. Sulejman Talovic was the shooter and he used a handgun and shotgun to kill five people. One of the murder weapons was procured from Mackenzie Hunter, and used to kill Vanessa Quinn. I write separately because the process in this case failed to adequately support the rights of crime victims such as Ms. Quinn as guaranteed by the CVRA.

Two issues are presented for review. The first is the standard of review. The Second and Ninth Circuits have applied a relaxed standard for resolving appeals under the CVRA. The Ninth Circuit, for example, would "issue the writ whenever [it] find[s] that the district court's order re-

flects an abuse of discretion or legal error." *Kenna v. U.S. Dist. Ct.*, 435 F.3d 1011, 1017 (9th Cir.2006). The Second Circuit holds that in reviewing a petition under the CVRA, we should review factual determinations for clear error, legal issues de novo, and the resolution of the application for a writ for abuse of discretion. *In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 562 (2d Cir.2005). We part company with these circuits and apply the traditional standard of review for petitions of mandamus.

Whatever the mandamus standard, the central issue is whether Vanessa Quinn's parents may seek to have her declared as a "crime victim" under the CVRA. Applying traditional rules of "but-for" and "proximate" causation, they argue that the district court should have concluded that she was a victim. In my view, the district court and the government erred in failing to permit the Antrobuses reasonable access to evidence which could support their claim. With this information, the Antrobuses may have been able to demonstrate the requisite causal connection between Hunter's crime and Ms. Quinn's murder. The government's cooperation is mandated by the CVRA, which requires the government to "make their best efforts to see that crime victims are notified of, and accorded, the rights" set forth in the Act. 18 U.S.C. § 3771(c)(1).

Here is what the Antrobuses might have demonstrated given the government's cooperation. First of all, the victim must be "directly" harmed by the crime. This encompasses a "but-for" causation notion that is met here.

In addition, the harm must "proximately" result from the crime. That is the more difficult issue, but the record suggests that the following evidence could be developed to show that Talovic's crime was a reasonably foreseeable result of the ille-

gal gun sale. (1) Hunter knew Talovic was a minor and could not legally purchase a gun in the first place; (2) the murder weapon was previously stolen; (3) Hunter heard Talovic's intent to commit bank robbery, a crime of violence where the use of a gun could reasonably result in a shooting; and, finally; (4) the shooting was not so remote in time as to be unforeseeable. I do not think it matters that Talovic committed a crime that is different from what he told Hunter; only that the crime could obviously and likely lead to violence. The language included in the indictment in fact makes clear that the government believed Hunter knew that Talovic "intended to carry or otherwise possess, or discharge or otherwise use the handgun in the commission of a crime of violence." If the intervening cause was foreseeable then proximate cause can be established.[1]

Taken together, these facts could establish that Ms. Quinn was a crime victim for purposes of the CVRA. This evidence may well be contained in the government's files. Sadly, the Antrobuses were not allowed a reasonable opportunity to make a better case.

## ORDER

Petitioners seek panel rehearing of our order of January 11, 2008 denying their petition for mandamus under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3).[1] We do not believe rehearing is appropriate, but offer here some additional words of explanation in light of petitioners' latest filing and the time constraints under which we operated when initially disposing of their mandamus petition.

### I

In their petition for rehearing, petitioners restate and develop their argument that this court should apply normal appellate standards of review rather than those applicable to writs of mandamus. We cannot agree. The plain language of the CVRA provides that "[i]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). Mandamus is a well worn term of art in our common law tradition. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170–71, 2 L.Ed. 60 (1803) (discussing mandamus standard for relief); *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004).[2] And the Supreme Court has made clear that "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed

---

1. The CVRA limits its causal nexus to traditional standards. *See, e.g., Restatement (Second) of Torts* §§ 302, 390, 449; *and see McDermott v. Midland Management, Inc.*, 997 F.2d 768, 770 (10th Cir.1993) ("[L]iability will still attach despite the existence of an intervening cause where the intervening cause was foreseen or might reasonably have been foreseen.").

1. Petitioners' petition for rehearing *en banc* in this matter is addressed at the end of this order. On February 1, 2008, we denied a second mandamus petition from petitioners in a separate matter, No. 08–4013; we note that rehearing has not been sought in that matter.

2. "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine the court against which mandamus is sought to a lawful exercise of its prescribed jurisdiction. Although courts have not confined themselves to an arbitrary and technical definition of jurisdiction, only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380, 124 S.Ct. 2576 (internal citations and alterations omitted).

word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

To be sure, petitioners point us to *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555 (2d Cir.2005). There, the Second Circuit held that ordinary mandamus standards do not apply in the CVRA context, stating that

> [u]nder the plain language of the CVRA, however, Congress has chosen a petition for mandamus as a mechanism by which a crime victim may appeal a district court's decision denying relief sought under the provisions of the CVRA. It is clear, therefore, that a petitioner seeking relief pursuant to the mandamus provision set forth in § 3771(d)(3) need not overcome the hurdles typically faced by a petitioner seeking review of a district court determination through a writ of mandamus.

*Id.* at 562 (internal quotations and citations omitted). The Ninth Circuit, in an equally brief passage, reached the same result. *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir.2006); *see also In re Walsh*, 229 Fed.Appx. 58, 60 (3d Cir.2007). With respect to our sister circuits, and aware of the time pressures under which they operated, we see nothing in their opinions explaining why Congress chose to use the word *mandamus* rather than the word *appeal*. To us, Chief Justice Marshall's admonition in *Marbury* seems to control here: "the appellate jurisdiction may be exercised in a variety of forms, and [ ] if it be the will of the legislature that a mandamus should be used for that purpose, that will must be obeyed." 5 U.S. at 175.[3]

Along these lines, it seems to us relevant that Congress well knows how to provide for ordinary interlocutory appellate review, rather than mandamus review, when it wishes to do so. In fact, merely four months after the CVRA was enacted, Congress passed the Class Action Fairness Act ("CAFA"), altering the general rule that an order by a district court remanding a previously removed case to the state court is not reviewable on appeal. Specifi-

---

3. Having decided the appeal vs. mandamus issue, the Second Circuit proceeded to decide the appropriate appellate standard of review, analogizing to *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Because under the statute at issue in *Pierce* "neither a clear statutory prescription nor a historical tradition" existed regarding the appropriate standard of review, the Supreme Court opted to apply an abuse of discretion standard. *Id.* at 558. Arguing that the same held true in the CVRA context, the Second Circuit likewise chose to apply an abuse of discretion standard of review. *In re W.R. Huff Mgmt. Co.*, 409 F.3d at 563; *see also Kenna*, 435 F.3d at 1017 (relying on *In re W.R. Huff Mgmt. Co.*). But, in *Pierce* the Supreme Court was asked to decide the standard of review applicable to a district court's award of attorney's fees under the Equal Access to Justice Act ("EAJA"). The provisions of the EAJA before the Court indicated that attorney's fees shall be awarded "unless the court finds that the position of the United States was substantially justified." *Pierce*, 487 U.S. at 559, 108 S.Ct. 2541. In analyzing what standard of review such language dictated, the Court stated that "[f]or some few trial court determinations, the question of what is the standard of appellate review is answered by relatively explicit statutory command. For most others, the answer is provided by a long history of appellate practice." *Id.* at 558, 108 S.Ct. 2541. The Court concluded, however, that the "substantial justification" language neither provided a clear statutory command nor was it enacted against the backdrop of historical appellate practice. By contrast, and as discussed above, the CVRA contains a clear statutory prescription regarding the nature of the appellate review petitioners may seek, and it also happens to be one imbued with a long history. We thus respectfully suggest that a correct application of *Pierce* leads back to mandamus review.

cally, CAFA provides that a court of appeals may, in its discretion, hear an appeal from such an order if application to the court of appeals is made within seven days, and having taken the case, the court of appeals must, again as a general rule, enter its judgment no more than 60 days after the appeal is filed. 28 U.S.C. § 1453(c). Of course, Congress equally could have opted for a different, mandamus, procedure in CAFA; the fact that it did not, we think, ought not be ignored. And, although it is only a rough measure, a computer-aided search of the United States Code indicates that the phrase "interlocutory appeal" appears 62 times, and the word "interlocutory" appears 123 times in the same sentence as the word "appeal."

Petitioners' argument that Congress could not practicably provide for an expedited form of interlocutory appellate review without modifying a host of standing legal rules is likewise without merit. Congress has placed time limits on when interlocutory appeals must be filed that differ from ordinary deadlines to file a notice of appeal,[4] and has placed time constraints on how long the court of appeals may take to rule.[5] In light of the fact that Congress regularly provides for and delineates the nature and scope of ordinary interlocutory appellate review, we see no reason to suppose that the use of the word mandamus in the CVRA has other than its traditional meaning.

This is especially so in light of the CVRA's own structure and language. While the CVRA provides individuals seeking review of a district court's "victim status" decision with mandamus review, it simultaneously affords the government with the ability to obtain ordinary appellate review of the same decision. *See* 18 U.S.C. § 3771(d)(4). Given this, to read the CVRA's mandamus provisions as requiring ordinary appellate review would "run[ ] afoul of the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez–Machain,* 542 U.S. 692, 712 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (internal quotations omitted). To be sure, petitioners offer arguments why individuals like themselves should be afforded greater appellate rights, more akin to the government's, but their arguments are best directed to Congress. Our job is to apply the CVRA as written, not to rewrite it as one might wish the law to be.

Additionally, petitioners claim that our reading of the statute renders the CVRA superfluous in light of the fact that the All Writs Act, 28 U.S.C. § 1651, already grants crime victims, or anyone else for that matter, the ability to petition for a writ of mandamus. On the contrary, however, we read Section 3771(d)(3) and (4) as affording litigants considerably more rights than they would otherwise have, with the former requiring that putative crime victims receive a decision from the court of appeals within 72 hours, a substantial expansion on the common law right codified in the All Writs Act, and the latter providing the government with a right to appeal a decision adverse to other

---

**4.** *See, e.g.,* 28 U.S.C. § 1292(b) (providing that the court of appeals may, in its discretion, consider an interlocutory appeal if, *inter alia,* the appeal is filed within ten days of the interlocutory order appealed).

**5.** Indeed, it did so just four months later in CAFA. 28 U.S.C. § 1453(c)(2). *See also* 18 U.S.C. § 2339B(f)(5)(B)(iii) (stating that in an interlocutory appeal by the government from an order authorizing, *inter alia,* the disclosure of classified information, the court of appeals shall hear argument within 4 days of the filing of the appeal and issue its decision no more than 4 days after argument).

parties (those seeking crime victims status).

Finally, to the extent that the 72–hour requirement can be read to suggest anything about Congress's intended standard of review, we think it too favors application of the deferential mandamus standard of review. It seems unlikely that Congress would have intended *de novo* review in 72 hours of novel and complex legal questions, such as, as here, whether the sale of a gun to a minor in violation of a statute is a proximate cause of any subsequent violent act committed with the gun by its purchaser.

## II

In the alternative, petitioners contend that even if traditional mandamus standards apply, the application in our January 11, 2008 order of a "clear and indisputable" standard is inconsistent with our precedent. That simply is not the case.

Petitioners argue that in this circuit we consider five factors to determine whether to grant a writ of mandamus, asking whether (1) the petitioner has alternative means to secure relief; (2) the petitioner will be damaged in a way not correctable on appeal; (3) the district court's order constitutes an abuse of discretion; (4) the order represents an often repeated error and manifests a persistent disregard of federal rules; and (5) the order raises new and important problems or issues of law that are questions of first impression. *See, e.g., In re Qwest Commc'ns Int'l Inc.,* 450 F.3d 1179, 1184 (10th Cir.), *cert. denied,* —— U.S. ——, 127 S.Ct. 584, 166 L.Ed.2d 429 (2006); *United States v. Gonzales,* 150 F.3d 1246, 1253–54 (10th Cir. 1998); *United States v. McVeigh,* 119 F.3d 806, 810 (10th Cir.1997). Contrary to petitioners' suggestion, however, these five factors are not an alternative to the "clear and indisputable right" standard, which the Supreme Court has reaffirmed as re-

cently as 2004. *See Cheney,* 542 U.S. at 381, 124 S.Ct. 2576 & *supra* note 2. Rather, the five factors are simply one, non-exclusive means of *applying* that standard.

The five factors apparently first came into use in this circuit in *Dalton v. United States (In re Dalton),* 733 F.2d 710 (10th Cir.1984). There, we explained that the issuance of writs of mandamus is "limited strictly ... to those exceptional cases where the inferior court acted wholly without jurisdiction or so clearly abused its discretion as to constitute usurpation of power," and that "in order to justify the invocation of this extraordinary remedy, the petitioning party has the burden of showing that its right to issuance of the writ is 'clear and undisputable.'" *Id.* at 716. Although we went on to offer five factors to help guide that analysis, we declined to hold that the satisfaction of those factors necessarily constituted a sufficient basis for the writ to issue. *Id.* at 716–17. Indeed, most of the cases petitioners cite in support of the five factors acknowledge as much. *See, e.g., In re Qwest,* 450 F.3d at 1182–83 ("The Supreme Court has required that a party seeking mandamus demonstrate that he has no other adequate means of relief and that his right to the writ is 'clear and indisputable.'"); *United States v. Roberts,* 88 F.3d 872, 882 (10th Cir.1996) ("The petitioner must demonstrate its right to a writ of mandamus is clear and indisputable."); *Pacificare of Okla., Inc. v. Burrage,* 59 F.3d 151, 153 (10th Cir.1995) ("The party seeking the writ must show that the right to the writ is 'clear and indisputable.'").

## III

Petitioners spend virtually no time arguing that our earlier order erred on the merits, instead focusing their efforts on the standard of review. In doing so, they fail to explain how the outcome would nec-

essarily change under the standard of appellate review they seek. Neither is it obvious to us that the outcome would change.

If we were to hold, on this record, that petitioners' daughter is a crime victim within the meaning of the CVRA, we would effectively establish a *per se* rule that any harm inflicted by an adult using a gun he or she illegally obtained as a minor is directly and proximately caused by the seller of the gun. In the instant case, and on this record, Mackenzie Glade Hunter knew only that Sulejman Talovic was a minor at the time the gun changed hands; the record before us is silent on the question whether Mr. Hunter had knowledge of Mr. Talovic's intentions with the firearm, *see* January 11, 2008 Order at 5, and Mr. Talovic was apparently an adult when he committed his terrible crimes. *Id.* at 6; Appellee's Response to Petition for Writ of Mandamus, Ex. B at 2. To be sure, some courts hold that the seller of a gun to a minor in violation of a statute is *per se* the proximate cause of harm inflicted by the minor (during his or her minority) with that gun. And to be sure, there are courts that refuse to apply a *per se* rule, but will hold sellers liable for harm inflicted by minors (again, during their minority) when there is some indicia that the seller of the gun knew of the minor's intent to misuse it. But petitioners have directed us to no authority of any kind suggesting that harm inflicted by an adult with a gun purchased during the adult's minority is, without more, *per se* directly and proximately caused by the seller of the gun. Thus, they fail to demonstrate or even suggest how adopting their proposed standard of review would affect the outcome of their petition.

\* \* \*

The petition for panel rehearing is denied. The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested that the court be polled, that petition also is denied.