[Cite as *In re C.W.*, 2025-Ohio-262.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

In re C.W.

Court of Appeals No. F-24-002

Trial Court No. DL2231092

**<u>DECISION AND JUDGMENT</u>**

Decided: January 24, 2025

* * * * *

Timothy C. Holtsberry, for appellee, C.W.

Latina Bailey, for appellant, A.H.

* * * * *

**SULEK, P.J.**

{¶ 1} This is an appeal from the dispositional judgment entry of the Fulton County Court of Common Pleas, Juvenile Division, following its adjudication of delinquency of appellee C.W. on two counts of gross sexual imposition. Appellant A.H., the minor victim of C.W.'s delinquent conduct, appeals the juvenile court's failure to award restitution. For the reasons that follow, the juvenile court's judgment is reversed, and this matter is remanded for a restitution hearing.

## I. Factual Background and Procedural History

{¶ 2} On December 20, 2023, the Defiance County Juvenile Court adjudicated C.W. delinquent on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree if committed by an adult. A third count of gross sexual imposition was dismissed. The matter was then transferred to the Fulton County Juvenile Court for disposition, and a predisposition investigation report was prepared.

{¶ 3} In the report, A.H.'s parents expressed a desire to be reimbursed for A.H.'s behavioral and equine therapy sessions as a form of punishment for C.W. A.H.'s behavioral therapy costs $100 per session, while her equine therapy costs $40 per session. In addition, A.H.'s father, Jo.H., reported that his previous mental health concerns have been exacerbated, causing him to see mental health providers three to four times per week and to have his medications adjusted. A.H.'s mother, Ju.H., also has been receiving counseling as C.W.'s conduct brought up memories of her own childhood abuse. In describing what they would like to see happen to C.W., A.H.'s parents specifically checked the boxes for "no contact," "restitution," "incarceration," "counseling/treatment," and "other."

{¶ 4} The Fulton County Juvenile Court held the dispositional hearing on February 7, 2024. Relevant here, neither the prosecutor nor the victim's father raised the issue of restitution. The trial court did note, however, that A.H.'s family requested restitution in the predisposition investigation report. It responded, "That's a civil matter.

2.

You may want to contact a lawyer there's a statute that provides for parental liability and you may want to talk to your attorney about that." The trial court then proceeded to impose its disposition.

## II. Assignment of Error

{¶ 5} A.H. timely appeals the trial court's dispositional judgment entry, asserting one assignment of error for review:

1. The trial court erred when it refused to order Adjudicated Delinquent Appellee C.W. to pay restitution to Victim-Appellant A.H. in violation of Article I, Section 10a(A)(7) of the Ohio Constitution, Revised Code Section 2152.20, and Revised Code Section 2152.203.

## III. Analysis

{¶ 6} "Marsy's Law," which is enshrined in the Ohio Constitution, provides,

(A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:
. . .
(7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim.
. . .
(B) The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.
. . .
(D) As used in this section, "victim" means a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act. The term "victim" does not include the accused or a person whom the court finds

3.

would not act in the best interests of a deceased, incompetent, minor, or incapacitated victim.

Ohio Const., art. I, § 10(a).

{¶ 7} A.H. contends that the trial court erred when it declined to consider restitution, dismissing it as a "civil matter." Generally, "[a] decision to award restitution lies within the sound discretion of a juvenile court and will not be reversed on appeal absent an abuse of discretion." *In re N.V.*, 2024-Ohio-2197, ¶ 15 (6th Dist.), quoting *In re A.B.*, 2021-Ohio-4273, ¶ 8 (1st Dist.). In this case, however, the issue is not the trial court's exercise of discretion in awarding or not awarding restitution, rather it is the trial court's erroneous determination that restitution is not permitted in delinquency proceedings, but is instead a civil matter. "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *State v. Futrall*, 2009-Ohio-5590, ¶ 6. Thus, this matter will be reviewed de novo. *See id.* at ¶ 7.

{¶ 8} Under Marsy's Law, the victim is entitled to full and timely restitution. Further, R.C. 2152.20(A)(3) provides, in relevant part,

> If a child is adjudicated a delinquent child . . . the court may order any of the following dispositions, in addition to any other disposition authorized or required by this chapter:
> . . .
> (3) . . . [R]equire the child to make restitution to the victim of the child's delinquent act . . . in an amount based upon the victim's economic loss caused by or related to the delinquent act . . ..
>
> The victim, victim's representative, victim's attorney, if applicable, the prosecuting attorney, or the delinquent child or juvenile traffic offender may provide information relevant to the determination of the amount of

restitution. The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the delinquent act . . .. If the court decides to or is required to order restitution under this division and the amount of the restitution is disputed by the victim or survivor, victim's estate, victim's representative, or victim's attorney, if applicable, or by the delinquent child . . ., the court shall hold a hearing on the restitution. The court shall determine the amount of full restitution by a preponderance of the evidence.

"Economic loss" includes "[m]ental health counseling expenses." R.C. 2152.203(B)(3).

{¶ 9} C.W. argues that restitution is not appropriate in this case because no evidence was presented to suggest an exact amount of economic loss. While it is true that no evidence was presented as to restitution, this was only because the trial court erroneously dismissed it as an option. Thus, since A.H. is entitled to restitution under Marsy's Law, this matter must be remanded to the trial court for a hearing to determine the mental health counseling expenses that she incurred as a result of C.W.'s offenses against her.

{¶ 10} A.H. further argues that her parents are also direct victims of C.W.'s conduct and are also entitled to restitution from him under Marsy's Law. A.H.'s parents, however, have not appealed the trial court's decision denying them restitution. The notice of appeal names only A.H, and the docketing statement lists appellant's counsel as the attorney for "Victim-Appellant A.H." Likewise, A.H.'s lone assignment of error states that "[t]he trial court erred when it refused to order Adjudicated Delinquent Appellee C.W. to pay restitution to the Victim-Appellant A.H."

{¶ 11} Moreover, A.H. lacks standing to raise this argument on behalf of her parents.

5.

{¶ 12} "An appeal is permitted only to correct errors which injuriously affect an appellant." *In re Leo. D.*, 2002-Ohio-1174, *2, fn. 2 (6th Dist.); *see also Ohio Contract Carriers Assn. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), syllabus; *Mulqueeny v. Mentor Chiropractic Center, Inc.*, 2002-Ohio-1687, *2 (11th Dist.). "An appellant usually does not have standing to argue issues affecting another person." *UBS Fin. Servs., Inc. v. Lacava*, 2017-Ohio-7916, ¶ 9 (9th Dist.). "'Similarly, a party generally may not prosecute an appeal to protect the rights of a third party.'" *Id.*, quoting *Mulqueeny* at *2. "An appellant may not assign errors committed against a non-appealing party, unless the errors are prejudicial to the rights of the appellant." *Id.*; *see also Mulqueeny* at *2; *Warino v. Worldwide News. Corp.*, 2013-Ohio-5884, ¶ 14 (7th Dist.); *Alesi v. Warren Cty. Bd. of Commrs.*, 2014-Ohio-5192, ¶ 51 (12th Dist.).

{¶ 13} Any error in the portion of the trial court's judgment concerning A.H.'s parents' ability to recover restitution has not resulted in prejudice to A.H. because she had the opportunity to challenge the portions of the decision that affect her in this appeal. A.H., therefore, lacks standing to challenge the trial court's denial of restitution to her parents.

{¶ 14} Furthermore, this is not a case where the rights of A.H. and her parents are so interwoven or dependent on each other as to require a reversal of the trial court's entire judgment.

{¶ 15} "Generally, a reversal as to an appealing party will not justify reversal as to a nonappealing party unless the respective rights of the appealing party and nonappealing

party are so interwoven or dependent on each other as to require a reversal of the whole judgment." *McAdams v. Mercedes-Benz USA, LLC*, 2020-Ohio-3702, ¶ 28, citing *Wigton v. Lavender*, 9 Ohio St.3d 40 (1984), syllabus; *see also In re Complaint of Pilkington N. Am., Inc.*, 2015-Ohio-4797, ¶ 34 ("[W]here one party appeals a judgment, a reversal as to that party generally will not justify a reversal as to nonappealing parties.").

{¶ 16} In *Wigton*, Aetna Insurance Company and several other plaintiffs filed a complaint against the defendants alleging that three minors unlawfully entered a barn and burned, damaged, and destroyed the barn and its contents. *Wigton* at 41. At trial, the court directed a verdict in favor of the defendants. *Id.* Of the plaintiffs, only Aetna appealed. The court of appeals reversed the trial court's judgment and remanded the matter for a new trial. *Id.* On remand, the trial court held that the nonappealing plaintiffs did not have standing to participate in the new trial because they did not appeal the directed verdict. *Id.*

{¶ 17} The Supreme Court affirmed and held that "each of the [nonappealing plaintiffs] and Aetna in this property damage case had separate and distinct causes of action arising out of an alleged single act . . ., causing separate and severable damage to property in differing degrees and amounts. Four separate and distinct lawsuits could have been filed." *Id.* at 43. Nonetheless, "Aetna was the only plaintiff who appealed the trial court's grant of the directed verdict. It had no interest in this appeal except to have the judgment reversed as to it, for none of its interests was contingent upon or in conflict with those interests of the other plaintiffs." *Id.* Accordingly, "[s]o far as the retrial of the

7.

case is concerned, there is no reason why that trial cannot be had with relation to Aetna's claim without in any way affecting the rights of [the nonappealing plaintiffs] as determined by the previous judgment." *Id.*

{¶ 18} More recently, in *McAdams*, the plaintiff filed a complaint against Mercedes-Benz USA, LLC (MB USA) and Mercedes-Benz of Easton (MB Easton) asserting claims related to mechanical problems with her vehicle. The trial court entered summary judgment in favor of the defendants and concluded that the plaintiff's claims were barred by res judicata because she was bound by a class action settlement. *McAdams* at ¶ 15. The Tenth District Court of Appeals reversed. *Id.* at ¶ 17-18. MB USA appealed to the Supreme Court of Ohio; MB Easton did not.

{¶ 19} The Supreme Court reversed the court of appeals and reinstated the trial court's judgment as to MB USA. *Id.* at ¶ 27. The court recognized the "Tenth District's error also affects the judgment against MB Easton," however, "because MB Easton did not appeal, we leave the Tenth District's judgment as to that party undisturbed." *Id.* at ¶ 28.

{¶ 20} In this case, the rights of A.H. and her parents are not so interwoven or dependent on each other as to require a reversal of the trial court's entire judgment. The issue of restitution owed by C.W. to A.H. for mental health counseling expenses that she incurred is not contingent on, or in conflict with, her parents' ability to seek restitution for their own mental health counseling expenses. The hearing on what restitution is owed

8.

to A.H. can proceed without in any way affecting the rights of her parents as determined by the trial court's previous judgment.

## IV. Conclusion

{¶ 21} Accordingly, A.H.'s assignment of error is well-taken only to the extent that it pertains to the trial court's denial of restitution to her.

{¶ 22} The judgment of the Fulton County Court of Common Pleas, Juvenile Division, is reversed, and this matter is remanded to the trial court for a restitution hearing on the amount of economic damages sustained by A.H.  C.W. is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.          _____
                                              JUDGE

Charles E. Sulek, P.J.
CONCUR                          _____
                                              JUDGE


Myron C. Duhart, J.
CONCURS, IN PART, DISSENTS,
IN PART, AND WRITES             _____
SEPARATELY.                                  JUDGE


**DUHART, J., concurring in part and dissenting in part.**

{¶ 23} The statutes at issue in this case are R.C. 2152.20 and R.C. 2152.203. Under R.C. 2152.20(A)(3), if a child is adjudicated a delinquent child for an act that

9.

would not be a minor misdemeanor if committed by an adult, the juvenile court may require the child to make restitution to the victim of the child's delinquent act in an amount based upon the victim's economic loss caused by or related to the delinquent act. The statute further provides that "[i]f the court decides to *or is required to* order restitution under this division and the amount of the restitution is disputed by the victim…or by the delinquent child…the court shall hold a hearing on the restitution," and that "[t]he court shall determine the amount of full restitution by a preponderance of the evidence." R.C. 2152. 20(A)(3) (emphasis added). R.C. 2152.203(B)(1) provides that "economic loss" includes, but is not limited to, mental health counseling expenses.

{¶ 24} Ohio Const., art. I, § 10a, "Marsy's Law," states:

> (A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:
>
> …
>
> (3) to be heard in any public proceeding involving …disposition;
>
> (7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim.
>
> (B) The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition.

**{¶ 25}** "Restitution in Ohio is limited to economic losses suffered by the victim as a direct and proximate result of the commission of the offense." *State v. Yerkey*, 2022-Ohio-4298, ¶ 1. "Generally speaking, a consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *Id.* at ¶ 16; *see also State v. Whitaker*, 2024-Ohio-2495, ¶ 37 (6th Dist.).

**{¶ 26}** Here, I agree with the majority that A.H. is a victim who under the Ohio Constitution (and under R.C. 2152.20, and R.C. 2152.203) is entitled to a hearing on the matter of restitution for mental health counseling expenses that she incurred as a result of the offenses that were committed against her by C.W.

**{¶ 27}** In this case, we are also asked to consider whether A.H.'s parents are entitled to be heard in connection with their own claims for restitution for mental health counseling expenses.

**{¶ 28}** Beginning with the question of whether A.H.'s parents are themselves "victims" under the law, I once again look to Marsy's Law, which defines a victim as follows:

> As used in this section, "victim" means a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act.…

Ohio Const., art. I, § 10a (D).

**{¶ 29}** As stated in Judge Boyle's concurring opinion in *Cleveland v. Alrefaei*, 2020-Ohio-5009, ¶ 78 (8th Dist.), under Marsy's Law, a victim "does not need to be

named in the complaint or indictment, but rather just directly and proximately harmed by the act." Noting that the federal Crime Victims' Rights Act ("CVRA") similarly defines a crime victim as a person "directly and proximately harmed as a result of the commission of a Federal offense, Judge Boyle pointed to the words of the Eleventh Circuit Court of Appeals, which observed:

> The CVRA…does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document. The statute, rather, instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties. Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission.

*Id,* quoting *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008). Another federal circuit court explained:

> 'The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses.' *In re Rendon Galvis,* 564 F.3d 170, 175 (2d Cir.2009) (citing *In re Antrobus,* 519 F.3d 1123, 1126 (10th Cir.2008) (Tymkovich, J., concurring) (noting that "direct[ ]" harm encompasses a "but-for" causation notion that is different from proximate harm)). 'The necessary inquiry is [ ] fact-specific[.]' *Id.* (citations omitted).

*In re McNulty*, 597 F.3d 344, 350 (6th Cir. 2010).

Thus, under the specific language of Marsy's Law, "third parties may be able to receive restitution if the offender's conduct directly and proximately harmed them." *Alrefaei* at ¶ 79 (Boyle, J., concurring).

12.

{¶ 30} To answer the question of whether A.H.'s parents could have been "directly and proximately harmed" by C.W.'s actions against their daughter, I look to R.C. 2743.51 for guidance. R.C. 2743.51 provides definitions for terms used in the Revised Code chapter governing awards of reparations for economic loss arising from criminally injurious conduct. R.C. 2743.51(L)(2) defines a victim as "[a] person who is an immediate family member of a victim of criminally injurious conduct that consists of …a sexual assault, who requires psychiatric care or counseling as a result of the criminally injurious conduct." In addition, R.C. 2743.51(F)(2) specifies that "reasonable charges incurred for psychiatric care or counseling reasonably needed as a result of the criminally injurious conduct" are an "allowable expense" for victims described under R.C. 2743.51(L)(2). Thus, under R.C. 2743.51(L)(2) and (F)(2), parents of sexual assault victims themselves qualify as victims who are entitled to relief for their own counseling expenses incurred as the result of the offenses committed against their children.

{¶ 31} Even before R.C. 2743.51 was amended to specifically provide that parents of a sexually abused child are victims in their own right, the Court of Claims in *In re Kaman*, 62 Ohio Misc.2d 288, 294 (Jul. 26, 1991), deemed a parent-applicant to be a victim where "[i]n spite of the lack of spatial and temporal proximity to the crime," the parent-applicant "suffered a great deal of emotional distress and anxiety due to her direct awareness that her daughter had been [sexually] assaulted."

{¶ 32} I likewise believe in this case that A.H.'s parents are properly viewed as victims of C.W.'s offenses against A.H. Because counseling expenses of theirs may well

13.

have directly and proximately resulted from the commission of those offenses, it is my opinion that A.H.'s parents are entitled to a hearing on the matter of restitution for those expenses.

{¶ 33} In reaching this conclusion, I acknowledge that only A.H., and not her parents, appealed the trial court's decision in this case. However,"'[c]ourts have…permitted the benefits of an appeal to inure to a nonappealing party…where the justice of the case requires the reversal or modification of the judgment as to nonappealing parties.'" *Reighard v. Cleveland Elec. Illuminating*, 2006-Ohio-2814, ¶ 10 (7th Dist.), quoting *Wigton v. Lavender*, 9 Ohio St.3d 40, 42. Where one party appeals from a judgment, a reversal as to him will justify a reversal against other non-appealing parties if "'"the respective rights of the appealing party and non-appealing parties are so interwoven or dependent on each other as to require a reversal of the whole judgment.'" *Id.*, citing *Wigton* at 43. Here, I would find that the parties' claims are not separate and distinct, given the likelihood that any anxiety on the part of A.H.'s parents that resulted from the assaults on A.H. affected not only them, but also their interactions with A.H. Thus, I believe the rights of the appealing and non-appealing parties can be said to be so interwoven as to allow reversal of the entire judgment for all claimants even if this would serve to inure to the benefit of the non-appealing-parent claimants.

{¶ 34} Accordingly, I concur with the majority opinion's finding that this matter must be remanded to the trial court for a hearing to determine the mental health counseling expenses that A.H. incurred as a result of C.W.'s offenses against her.

However, I respectfully dissent from the majority opinion because I believe A.H.'s parents are also entitled to a hearing on the matter of restitution for their own counseling expenses that may have directly and proximately resulted from the commission of C.W.'s offenses against their daughter.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.