[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 19, 2008
THOMAS K. KAHN
CLERK

No. 08-16753

_____

IN RE: JANIS W. STEWART AND
OTHER BORROWER-CRIME VICTIMS

----------------------------
On Petition for Writ of Mandamus to the United States
District Court for the Middle District of Florida
----------------------------

Before:  TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

The Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, provides that

victims of a federal crime may appear and be heard during some phases of the

prosecution of the person charged with the crime.[1]  The CVRA requires the

---

[1] 18 U.S.C. § 3771 states in relevant part as follows:
(a) Rights of crime victims.--A crime victim has the following rights: . . .
(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
(4) The right to be reasonably heard at any public proceeding in the district court involving release [on bail], plea, sentencing, or any parole proceeding.
(5) The reasonable right to confer with the attorney for the Government in the case.

Government to "make [its] best efforts to see" that the court (in which the prosecution is pending) permits the victim to appear and be heard.[2] If the court refuses to allow the victim to appear, the victim may move the United States Court of Appeals for a writ of mandamus.[3]

Several persons claiming to be victims of the crime charged in United States v. Coon, No. 08-CR-441-T-17MAP (M.D. Fla.), moved the magistrate judge – as he was entertaining, and conditionally accepting, the defendant Phillip Coon's

(6) The right to full and timely restitution as provided in law. . . .
(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.
(b) Rights afforded.--
(1) In general.--In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). Before making a determination described in subsection (a)(3), the court shall make every effort to permitt the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

[2] § 3771 states:
(c) Best efforts to accord rights.--
(1) Government.--Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).

[3] § 3771 states in pertinent part:
(d)(3) Motion for relief and writ of mandamus.--The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. . . . If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.

2

guilty plea pursuant to an information and a plea agreement – for leave to appear in the case and to be heard. The magistrate judge refused to recognize the movants as victims, and denied their motion. The district court subsequently adhered to the magistrate judge's ruling. The movants ("petitioners") now petition this court for a writ of mandamus. We grant the writ.

I.

Petitioners are individuals who purchased houses from various real estate developers.[4] Petitioners entered into contracts with Coast Bank of Florida ("the Bank") to obtain funding to purchase the houses. The defendant, Philip Coon, was an Executive Vice President of the Bank's mortgage lending department and remotely supervised the closing of the mortgage loans. Petitioners[5] were referred to the Bank by American Mortgage Link ("AML"), the "mortgage origination firm." AML charged the Bank the bank a one percent mortgage brokerage fee for the mortgage loans the Bank closed. Petitioners, and others, paid the fee at closing.

---

[4] The facts recited in part I. are taken from the information and plea agreement filed in United States v. Coon and the Fed. R. of Crim. P. 11 plea hearing conducted by the magistrate judge. The petitioners number well over 100 individuals. Hundreds more are similarly situated, but have not attempted to exercise their CRVA rights.

[5] In referring to petitioners, we refer only to the borrowers that attempted to intervene in this case pursuant to the CVRA.

John Miller, AML's president, and Coon agreed that petitioners would pay two percent, instead of the one percent that AML and the Bank had agreed on, and that Miller and Coon would keep for themselves, and split, the extra one percent following the closing. Miller and Coon engaged in this fee-splitting arrangement – unbeknownst to the Bank (other than to Coon) and AML (other than to Miller) – from late 2004 and January 2007. They laundered the fee-splitting proceeds through a sham corporation, Solutions Processing, Inc., before utilizing their ill-gotten gains.

## II.

On October 15, 2008, the United States filed a one-count information[6] against Coon alleging that he and Miller conspired to deprive the Bank of honest services in violation of the wire fraud statute[7] and to commit money laundering.[8] The information contained a forfeiture count providing that Coon should forfeit to

---

[6] Coon waived his right to a grand jury indictment and elected to proceed by information.

[7] The wire fraud statute, 18 U.S.C. § 1343, proscribes "devis[ing] or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises [and transmitting] or caus[ing] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

[8] The money laundering statute, 18 U.S.C. § 1956, proscribes "conduct[ing] or attempt[ing] to conduct . . . a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity."

the United States the approximately $1,500,000 petitioners and others paid him (and Miller) via the excess mortgage brokerage fee. On November 5, Coon and the Government entered into a plea agreement, and later in the day he appeared before a magistrate judge and, pursuant to that agreement, tendered a plea of guilty. The plea agreement called for Coon, in addition to forfeiting the proceeds of the crime, to make restitution to the victims of the crime.

Petitioners appeared before the magistrate judge on November 5 and asked to be heard. The Assistant United States Attorney prosecuting the case opposed petitioner's request, claiming that petitioners were not victims of the offense charged in the information. The magistrate judge agreed and denied petitioners the right be heard. On November 11, petitioners followed up with a written motion to the district court memorializing the request they had made to the magistrate judge. The court denied their motion on November 14.

On December 2, petitioners petitioned this court for a writ of mandamus, asking us to declare them CRVA victims and to direct the district court to act accordingly. The United States, Coon, and the district court (collectively, "respondents") filed separate responses to the petition, contending that petitioners do not qualify as victims under the CVRA.

### III.

A.

The mandamus proceeding before us is a free standing cause of action, brought by persons claiming to be CRVA victims against the district judge who denied them the right to appear and be heard. That is, the proceeding is not an appeal of a district court judgment, nor is it an interlocutory appeal of an intermediate order. The question the petition presents is whether petitioners are victims of the criminal conduct as described in the information pending in the district court. The question is a mixed question of law and fact. The facts are not in dispute: petitioners paid the mortgage brokerage fee, one percent of which went to the Bank, one percent of which lined Coon and Miller's pockets. What remains is the question of whether petitioners are victims of the crime charged in the information.

The information alleges that Coon and Miller conspired to deprive the Bank of honest services and to commit money laundering. Petitioners do not contend that they are victims of the money laundering conspiracy, and we agree. Their contention is that they are victims of the conspiracy to deprive the Bank of honest services. Respondents disagree. They assert that the Bank is the victim and that it, alone, has the rights conferred by the CVRA.

The CVRA defines crime victim as any "person directly and proximately

6

harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). To determine a crime victim, then, first, we identify the behavior constituting "commission of a Federal offense." Second, we identify the direct and proximate effects of that behavior on parties other than the United States.[9] If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA.

## B.

The relevant criminal behavior in this case is Coon and Miller's execution of a scheme to pocket one percent of the mortgage brokerage fee petitioners paid at closing. On the face of it, petitioners were victims. The agreement between petitioners and the Bank in this case provided that "[t]he borrower shall pay, or provide payment for all costs of the closing of the loan and all expenses incurred by the Bank with respect thereto." These closing costs included the mortgage brokerage fee. As a consequence of the increase in the mortgage brokerage fee, therefore, petitioners became liable under their contract with the Bank for an extra one percent of their total loan, suffering direct and proximate harm.

Respondents contend that petitioners were not harmed because they did not pay the mortgage brokerage fee. Respondents point to the agreement between

_____

[9] The word "parties" includes persons and other legal entities.

7

petitioners and their real estate developers, in which the developer promised that it would pay all closing costs.[10] Respondents fail to recognize, however, that the agreement did not affect petitioners' promise to the Bank. Petitioners remained liable to the Bank for the closing costs, notwithstanding the developers' obligation to assume those costs.

The developers' promise to pay closing costs functioned to provide petitioners with a source of funding that they could use to offset their obligation to the Bank. Petitioners could have obtained such funding from any of a number of sources, including, for example, another lending institution. That petitioners obtained funding for the closing costs from the developers does not mean that they were not liable to the Bank for such costs.

Respondents' argument also fails for the independent reason that any rational developer would have passed the increased closing cost, i.e., half of the mortgage brokerage fee, on to petitioners by inflating the purchase price of the house. Assume, for example, a situation in which a developer negotiates a

---

[10] The agreements between petitioners and their developers:

> **Closing Costs.** Buyer agrees to pay the purchase price. Builder agrees to pay closing costs (including but not limited to, appraisal fees, credit reports, Bank inspection fees, doc prep fees, recording fees, and city, county, and state tax stamps and stamps on the mortgage and deed), loan origination and/or discount points.

$190,000 price for a house on the assumption that the buyer will be responsible for $10,000 in closing costs. That developer will subsequently accept an obligation to pay the closing costs only if the buyer agrees to pay $200,000 instead of $190,000 for the house. A rational developer would be indifferent between receiving a $200,000 purchase price and paying $10,000 in closing costs and receiving a $190,000 purchase price and paying zero in closing costs; either way, it walks away with $190,000. Similarly, a rational buyer would be indifferent between paying a $190,000 purchase price and $10,000 in closing costs and paying a $200,000 purchase price and zero in closing costs, as he pays a net total of $200,000 in either situation. The result is that it does not matter whether the buyer or developer agrees to pay the costs of closing.

## C.

The United States presents a separate objection that petitioners are not victims because the Bank is mentioned as a victim in the information and petitioners are not. This argument implicitly and mistakenly assumes that any CVRA victim must be mentioned in the indictment or information. Put differently, it assumes that the identity of any CVRA victim must be an element of the offense itself.

The CVRA, however, does not limit the class of crime victims to those

9

whose identity constitutes an element of the offense or who happen to be identified in the charging document. The statute, rather, instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties. Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission.

Here, therefore, petitioners are not automatically disqualified as victims merely because they are not mentioned in the information. Because the criminal activity directly and proximately harmed petitioners, they are victims and enjoy the rights the CVRA creates.

## IV.

For the foregoing reasons, the petition for a writ of mandamus is GRANTED. The district court is ordered to recognize petitioners as victims and afford them the rights of victims under the CVRA. See, e.g., 18 U.S.C. § 3771(d)(5). Although the petition does not seek relief against the Assistant United States Attorney prosecuting the case, we expect that attorney to be mindful of the obligations imposed by section 3771(c) of the statute.

SO ORDERED.

WILSON, Circuit Judge, dissenting:

A writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes" and should issue here only if the lower court committed a "clear abuse of discretion." *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380, 124 S. Ct. 2576, 2586-87, 159 L.Ed.2d 459 (2004) (internal quotation marks and citations omitted). I do not believe that this case meets that standard. Before a Circuit Court of Appeals may issue a writ of mandamus, a petitioner must show that his or her right to the issuance of the writ is "clear and indisputable." *Id.* at 381, 124 S. Ct. at 2587. Irrespective of whether the indictment in this case named Petitioners as "victims," reasonable jurists can disagree (and have disagreed) as to whether Petitioners are "crime victims" under the Crime Victims' Rights Act. *See* 18 U.S.C. § 3771(e) (defining a crime victim as any "person directly and proximately harmed as a result of the commission of a Federal offense"). Therefore, I see no clear abuse of discretion by the district court, and tried notions of judicial restraint dictate that a writ of mandamus not issue in this case. *See Cheney*, 542 U.S. at 381, 124 S. Ct. at 2587 (citations omitted) ("[T]he issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."). I respectfully dissent.

11