**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

W. Patrick Kenna,

          *Petitioner,*

      v.

United States District
Court for the Central
District of California,

          *Respondent.*

No. 05-73467

D.C. No.
CR-03-00568-JFW

OPINION

Petition for Writ of Mandamus to the
United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
January 11, 2006—Pasadena, California

Filed January 20, 2006

Before: Alfred T. Goodwin, Daniel M. Friedman,* and
Alex Kozinski, Circuit Judges.

Opinion by Judge Kozinski;
Dubitante by Judge Friedman

---

*The Honorable Daniel M. Friedman, Senior United States Circuit
Judge for the Federal Circuit, sitting by designation.

**COUNSEL**

Steven J. Twist, Scottsdale, Arizona; Keli B. Luther, Crime Victims Legal Assistance Project, Tempe, Arizona; John A. Case, Jr., Law Offices of John A. Case, Jr., Los Angeles, California; for the petitioner.

The Honorable John F. Walter, Los Angeles, California, respondent.

Viet D. Dinh, Wendy J. Keefer, Bancroft Associates PLLC, Washington, DC; Richard Stone, Hogan & Hartson L.L.P., Los Angeles, California; H. Christopher Bartolomucci, Hogan & Hartson L.L.P., Washington, DC; for amici curiae United States Senators Jon Kyl and Dianne Feinstein.

Assistant United States Attorney R. Stephen Kramer was present at oral argument on behalf of the United States and answered questions, but did not file a brief or take a position on the merits.

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether the Crime Victims' Rights Act, 18 U.S.C. § 3771, gives victims the right to allocute at sentencing.

**Facts**

Moshe and Zvi Leichner, father and son, swindled scores of victims out of almost $100 million. While purporting to make investments in foreign currency, they spent or concealed the funds entrusted to them. Each defendant pleaded guilty to two counts of wire fraud and one count of money laundering. More than sixty of the Leichners' victims submitted written victim impact statements. At Moshe's sentencing, several, including petitioner W. Patrick Kenna, spoke about the effects of the Leichners' crimes—retirement savings lost, businesses bankrupted and lives ruined. The district court sentenced Moshe to 240 months in prison.

Three months later, at Zvi's sentencing, the district court heard from the prosecutor and the defendant, as required by Federal Rule of Criminal Procedure 32(i)(4). But the court denied the victims the opportunity to speak. It explained:

> I listened to the victims the last time. I can say for the record I've rereviewed all the investor victim statements. I have listened at Mr. Leichner's father's sentencing to the victims and, quite frankly, I don't think there's anything that any victim could say that would have any impact whatsoever. I—what can you say when people have lost their life savings and what can you say when the individual who testified last time put his client's [sic] into this investment and millions and millions of dollars and ended up losing his business? There just isn't anything else that could possibly be said.

One victim protested that "[t]here are many things that are going on with the residual and second and third impacts in this case that have unfolded over the last 90 days since we were last in this courtroom." But the district judge told the victims that the prosecutor could bring those developments to

his attention, and continued to refuse to let the victims speak. Zvi was sentenced to 135 months in prison.

Kenna filed a timely petition for writ of mandamus pursuant to the Crime Victims' Right Act (CVRA), 18 U.S.C. § 3771(d)(3). He seeks an order vacating Zvi's sentence, and commanding the district court to allow the victims to speak at the resentencing.

**Analysis**

**1.** The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children—seen but not heard. The Crime Victims' Rights Act sought to change this by making victims independent participants in the criminal justice process. *See* Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act, Pub. L. No. 108-405, §§ 101-104, 118 Stat. 2260, 2261-65 (2004) (codified at 18 U.S.C. § 3771). The CVRA guarantees crime victims eight different rights, and unlike the prior crime victims' rights statute, allows both the government and the victims to enforce them. *See* 18 U.S.C. § 3771(a), (d)(1); *United States* v. *McVeigh*, 106 F.3d 325, 335 (10th Cir. 1997) (per curiam).

**[1]** Kenna and the district court disagree over the scope of one of the rights guaranteed by the CVRA: "The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4). Kenna contends that his right to be "reasonably heard" means that he is entitled to speak in open court at Zvi's sentencing, if that is how he chooses to express himself. The district court argues that the words "reasonably heard" vest the judge with discretion about how to receive the views of the victims, and that the judge is entitled to limit Kenna to written victim statements or his prior statements at Moshe's sentencing. No court of appeals has considered the scope of this CVRA right, and the two district courts that have

closely considered it have reached opposite conclusions. *Compare United States* v. *Degenhardt*, 2005 WL 3485922, at *3 (D. Utah Dec. 21, 2005) (CVRA grants victims a right to speak) *with United States* v. *Marcello*, 370 F. Supp. 2d 745, 748 (N.D. Ill. 2005) (no it doesn't).

Kenna would have us interpret the phrase "reasonably heard" as guaranteeing his right to speak. For support, he points to the dictionary definition of "hear"—"to perceive (sound) by the ear." The American Heritage Dictionary of the English Language (4th ed. 2000), available at http:// www.bartleby.com/61/69/H0106900.html. Kenna concedes that the district court may place reasonable constraints on the duration and content of victims' speech, such as avoiding undue delay, repetition or the use of profanity.[1] However, in Kenna's view, the district court may not prohibit victims from speaking in court altogether or limit them to making written statements. This is the interpretation adopted by the district court in *Degenhardt*.

But this isn't the only plausible interpretation of the phrase "reasonably heard." According to the district court, to be "heard" is commonly understood as meaning to bring one's position to the attention of the decisionmaker orally or in writing. *See, e.g.*, *Fernandez* v. *Leonard*, 963 F.2d 459, 463 (1st Cir. 1992) ("Where the parties have had a 'fair opportunity to present relevant facts and argument to the court,' a matter may be " 'heard" on the papers' alone." (quoting *Aoude* v. *Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir. 1988))). The district court urges us to follow *Marcello* and hold that the CVRA guarantees victims only a right to make their position

---

[1]The CVRA itself contains one such nod to judicial economy. In crimes with multiple victims, the CVRA allows district courts to fashion "a reasonable procedure to give effect to [the act] that does not unduly complicate or prolong the proceedings." 18 U.S.C. § 3771(d)(2). Such a procedure may well be appropriate in a case like this one, where there are many victims.

known by whatever means the court reasonably determines. *See Marcello*, 370 F. Supp. 2d at 748. Even though "heard" has been held to include submission on the papers in some contexts, it does not follow that the CVRA calls for an equally broad construction. It merely shows that the district court's interpretation of the term is also plausible.[2]

The district court also argues that, had Congress meant to give victims a right to speak at sentencing hearings, it could easily have done so by using the word "speak" which clearly connotes only oral communications, not written ones. This is the term used in Federal Rule of Criminal Procedure 32(i)(4)(B), which gives the victims of certain types of crimes the right "to speak or submit any information about the sentence." The district court would have us infer from the fact that Congress used the more ambiguous term "heard" that it meant to give victims of crimes not covered by Rule 32 a more circumscribed right to present their views. However, the term "heard" does not appear in isolation in the CVRA. The full phrase we are construing is "[t]he right to be reasonably heard at any public proceeding in the district court involving . . . sentencing." Virtually all proceedings in district court are public in the sense that the papers and other materials may be viewed by anyone on request to the clerk's office.[3] When

---

[2]We do not read *Paladin Associates, Inc.* v. *Montana Power Co.*, 328 F.3d 1145, 1164-65 (9th Cir. 2003), as compelling a contrary result. In *Paladin*, a party seeking to avoid discovery sanctions argued that its right to be heard under Federal Rule of Civil Procedure 37(c)(1) entitled it to an evidentiary hearing. We held that "under the facts and circumstances of the present case, the opportunity to submit briefs was an 'opportunity to be heard' within the meaning of Rule 37(c)(1)." *Paladin*, 328 F.3d at 1164-65. Kenna does not claim the right to present evidence or testify under oath; he seeks the right of allocution, much like that traditionally guaranteed a criminal defendant before sentence is imposed. *Paladin* thus not only construed the term "heard" in a different context, but also dealt with the right to present evidence, which is not at issue here.

[3]The rare exception involves cases where certain portions of the record are sealed. This can occur only in rare and exceptional circumstances for compelling reasons. *Phoenix Newspapers, Inc.* v. *United States Dist. Court for the Dist. of Ariz.*, 156 F.3d 940, 946-47 (9th Cir. 1998).

Congress used the word "public" in this portion of the CVRA, however, it most likely meant to refer to proceedings in open court—much as the word is used in the common phrase "public hearing."[4] So read, the right to be "heard" at a "public proceeding" becomes synonymous with "speak" and we can draw no negative inference from the congressional choice of one term over the other.

**[2]** In the end, we find none of these textual arguments dispositive and conclude, as did *Degenhardt*, that both readings of the statute are plausible. The statute is therefore ambiguous as to what it means for crime victims to be heard. To resolve this ambiguity, we turn to the legislative history of the CVRA. *See Toibb* v. *Radloff*, 501 U.S. 157, 162 (1991) ("[A] court appropriately may refer to a statute's legislative history to resolve statutory ambiguity . . . ."). The Senate considered the CVRA in April 2004, and at that time the primary sponsors of the bill, Senators Jon Kyl and Dianne Feinstein, discussed this very issue:

> It is not the intent of the term "reasonably" in the phrase "to be reasonably heard" to provide any excuse for denying a victim the right to appear in person and directly address the court. Indeed, the very purpose of this section is to allow the victim to appear personally and directly address the court.

150 Cong. Rec. S4268 (daily ed. April 22, 2004) (statement of Sen. Kyl); *see also id.* (statement of Sen. Feinstein) ("That is my understanding as well."). Six months later, the CVRA was attached to a House bill, and Senator Kyl reiterated his understanding of the CVRA language.

---

[4]We rather suspect that Congress may have used the phrase "heard at any public proceeding" rather than "heard at any public hearing" in a fastidious effort to avoid saying "heard" and "hearing" within 5 words of each other. Of course, repetition—as well as ambiguity—could also have been avoided by using the phrase "speak at any public hearing," which is why we don't view the reference to a "public proceeding" as dispositive.

It is important that the "reasonably be heard" language not be an excuse for minimizing the victim's opportunity to be heard. Only if it is not practical for the victim to speak in person or if the victim wishes to be heard by the court in a different fashion should this provision mean anything other than an in-person right to be heard.

150 Cong. Rec. S10911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl).

**[3]** Floor statements are not given the same weight as some other types of legislative history, such as committee reports, because they generally represent only the view of the speaker and not necessarily that of the entire body. However, floor statements by the sponsors of the legislation are given considerably more weight than floor statements by other members, *see NLRB* v. *St. Francis Hosp. of Lynwood*, 601 F.2d 404, 415 n.12 (9th Cir. 1979), and they are given even more weight where, as here, other legislators did not offer any contrary views. Silence, the maxim goes, connotes assent, *see* Robert Bolt, *A Man for All Seasons* act 2, at 88 (1962), and so we can draw from the fact that no one registered disagreement with Senators Kyl and Feinstein on this point the reasonable inference that the views they expressed reflected a consensus, at least in the Senate.

**[4]** We also note that the CVRA passed as a compromise measure after a lengthy effort to amend the Constitution to protect victims' rights. The proposed constitutional amendment used language almost identical to that ultimately enacted in the CVRA; it guaranteed victims the right "reasonably to be heard." S.J. Res. 1, 108th Cong. (2003). But the legislative history of the proposed amendment is more substantial than that of the CVRA. The Senate Report on the amendment notes that:

The victim's right is to "be heard." The right to make an oral statement is conditioned on the vic-

tim's presence in the courtroom. . . . [V]ictims should always be given the power to determine the form of the statement. Simply because a decision making body, such as the court . . . has a prior statement of some sort on file does not mean that the victim should not again be offered the opportunity to make a further statement. . . . The Committee does not intend that the right to be heard be limited to "written" statements, because the victim may wish to communicate in other appropriate ways.

S. Rep. No. 108-191, at 38 (2003). The statements of the sponsors of the CVRA and the committee report for the proposed constitutional amendment disclose a clear congressional intent to give crime victims the right to speak at proceedings covered by the CVRA.

Our interpretation advances the purposes of the CVRA. The statute was enacted to make crime victims full participants in the criminal justice system. Prosecutors and defendants already have the right to speak at sentencing, *see* Fed. R. Crim. P. 32(i)(4)(A); our interpretation puts crime victims on the same footing. Our interpretation also serves to effectuate other statutory aims: (1) To ensure that the district court doesn't discount the impact of the crime on the victims; (2) to force the defendant to confront the human cost of his crime; and (3) to allow the victim "to regain a sense of dignity and respect rather than feeling powerless and ashamed." Jayne W. Barnard, *Allocution for Victims of Economic Crimes*, 77 Notre Dame L. Rev. 39, 41 (2001). Limiting victims to written impact statements, while allowing the prosecutor and the defendant the opportunity to address the court, would treat victims as secondary participants in the sentencing process. The CVRA clearly meant to make victims full participants.

**[5]** Nor was Kenna's statutory right vindicated because he had the opportunity to speak at Moshe's sentencing three

months earlier. The statute gives victims a "right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4). This language means that the district court must hear from the victims, if they choose to speak, at more than one criminal sentencing. The court can't deny the defendant allocution because it thinks "[t]here just isn't anything else that could possibly be said." Victims now have an indefeasible right to speak, similar to that of the defendant, and for good reason: The effects of a crime aren't fixed forever once the crime is committed—physical injuries sometimes worsen; victims' feelings change; secondary and tertiary effects such as broken families and lost jobs may not manifest themselves until much time has passed. The district court must consider the effects of the crime on the victims at the time it makes its decision with respect to punishment, not as they were at some point in the past. Moreover, the CVRA gives victims the right to confront every defendant who has wronged them; speaking at a co-defendant's sentencing does not vindicate the right of the victims to look *this* defendant in the eye and let him know the suffering his misconduct has caused.

**2.** We normally apply strict standards in reviewing petitions for a writ of mandamus, in large part to ensure that they not become vehicles for interlocutory review in routine cases. To this end, we grant the writ only when there is something truly extraordinary about the case—for example, clear or oft-repeated legal error by the district court, no other means for the petitioner to obtain review or an issue of first impression. This may well be such a case: The petitioner raises an issue of first impression, the district court clearly erred in its interpretation and Kenna has no other means of vindicating his rights. This case may thus merit review even under the strict standard announced in *Bauman* v. *United States District Court*, 557 F.2d 650, 654-55 (9th Cir. 1977).

**[6]** However, we need not balance the usual *Bauman* factors because the CVRA contemplates active review of orders

denying victims' rights claims even in routine cases. The CVRA explicitly gives victims aggrieved by a district court's order the right to petition for review by writ of mandamus, provides for expedited review of such a petition, allows a single judge to make a decision thereon, and requires a reasoned decision in case the writ is denied. The CVRA creates a unique regime that does, in fact, contemplate routine interlocutory review of district court decisions denying rights asserted under the statute. We thus need not balance the *Bauman* factors in ruling on mandamus petitions brought under the CVRA; rather, we must issue the writ whenever we find that the district court's order reflects an abuse of discretion or legal error. The Second Circuit has come to the same conclusion. *See United States* v. *Rigas* (*In re W.R. Huff Asset Mgmt. Co.*), 409 F.3d 555, 562 (2d Cir. 2005) (holding that "a petitioner seeking relief pursuant to the mandamus provision set forth in § 3771(d)(3) need not overcome the hurdles typically faced by a petitioner seeking review of a district court determination through a writ of mandamus"). We are aware of no court of appeals that has held to the contrary.

[7]   **3.** As we explained above, the district court here committed an error of law by refusing to allow petitioner to allocute at Zvi's sentencing and we must therefore issue the writ. We turn now to the scope of the remedy. Kenna asks us to vacate Zvi's sentence, and order the district court to resentence him after allowing the victims to speak. The problem is that the CVRA gives district courts, not courts of appeals, the authority to decide a motion to reopen in the first instance. *See* 18 U.S.C. § 3771(d)(5). Moreover, defendant Zvi Leichner is not a party to this mandamus action, and reopening his sentence in a proceeding where he did not participate may well violate his right to due process. It would therefore be imprudent and perhaps unconstitutional for us to vacate Zvi's sentence without giving him an opportunity to respond.

[8] We could delay further our consideration of the petition and order briefing from the defendant, but we think it more

advisable to let the district court consider the motion to reopen in the first instance. In ruling on the motion, the district court must avoid upsetting constitutionally protected rights, but it must also be cognizant that the only way to give effect to Kenna's right to speak as guaranteed to him by the CVRA is to vacate the sentence and hold a new sentencing hearing. We note that if the district court chooses not to reopen the sentence, Kenna will have another opportunity to petition this court for mandamus pursuant to the CVRA. Likewise, defendant will be able to contest any change in his sentence through the normal avenue for appeal (assuming he has not waived such rights as part of the plea bargain).

**4.** Finally, we recognize that under 18 U.S.C. § 3771(d)(3), we were required to "take up and decide [this] application forthwith within 72 hours after the petition [had] been filed." *Id.* We acknowledge our regrettable failure to consider the petition within the time limits of the statute, and apologize to the petitioner for this inexcusable delay. It may serve as a small comfort for petitioner to know that, largely because of this case, we are in the process of promulgating procedures for expeditious handling of CVRA mandamus petitions to ensure that we comply with the statute's strict time limits in future cases. As victim participation in the criminal justice system becomes more common, we expect CVRA claims to become more frequent, and thus encourage district courts to modify their own procedures so as to give full effect to the CVRA.[5]

---

[5]We note, for example, that our task in crafting an effective remedy would have been greatly simplified, had the district court postponed Zvi's sentencing until the petition for writ of mandamus was resolved. District courts may consider whether to routinely postpone final imposition of sentence in cases where they deny a request by victims to exercise rights granted by the CVRA.

**Conclusion**

We grant the petition for writ of mandamus and hold that the district court erred in refusing to allow Kenna and other victims to speak at Zvi Leichner's sentencing hearing. The district court shall deem timely a motion pursuant to 18 U.S.C. § 3771(d)(5) filed by Kenna or any other of Zvi's victims within 14 days of the date of our opinion. If the district court grants the motion, it shall conduct a new sentencing hearing, according Kenna and the other victims the right to speak as described above.

**PETITION GRANTED.**

The panel retains jurisdiction over any future mandamus petitions arising from the Zvi Leichner criminal case.

---

FRIEDMAN, Senior Circuit Judge, *dubitante*:

Although I agree that the writ should issue, I am concerned about the seemingly broad sweep of the opinion.

1.  The court decides — and I agree — that the requirement in the Crime Victims Rights Act ("the Act") that crime victims may be "reasonably heard" at sentencing entitles them to speak there. The court then holds — and I again agree — that the district court could not justify its refusal to permit the victims of this huge swindle to speak at Zvi's sentencing because it had permitted them to speak at his father's sentencing three months earlier (both father and son participated in the fraud).

My concern is that the court seems to hold that a victim has an absolute right to speak at sentencing, no matter what the circumstances. As the court states, "the CVRA gives victims the right to confront every defendant who has wronged them;

speaking at a co-defendant's sentencing does not vindicate the right of the victims to look *this* defendant in the eye and let him know the suffering his misconduct has caused." Suppose that the present case were changed so that Zvi's sentencing took place immediately after his father's on the same day, and that Kenna had been allowed to speak at the father's sentencing (as he did). Would he have an absolute right to speak an hour later at Zvi's sentencing and to repeat what he had just stated? Perhaps the Act would give him that right, but it is not clear to me that this statute goes that far. I would leave that issue open and issue an opinion of more limited scope.

2.  There is a similar sweep to the mandamus writ the court issues. Although only Kenna filed a petition for mandamus, the "Conclusion" of the opinion gives not only Kenna but the "other victims" of the fraud the right to speak at Zvi's sentencing. Suppose a case with five defendants and 20 victims. Does each victim have the right to speak at the sentencing of each defendant? Although the court notes that "Kenna concedes that the district court may place reasonable constraints on the duration and content of victims' speech, such as avoiding undue delay, repetition or the use of profanity," it stops short of accepting this concession. In the hypothetical I have just posed, it is difficult to believe that the Act requires the court to listen to 100 victim statements. Once again, I think that the statutory standard of "reasonably heard" may permit a district court to impose reasonable limitations on certain oral statements. Perhaps in my hypothetical, the court could require multiple victims, as a condition to speaking, to state what they would add to the prior statements of other victims. In any event, I would think that our writ would only require the district court to consider allowing Kenna to speak at any resentencing. I would leave it to the district court initially to decide whether other victims also may speak there.