**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
      *Plaintiff-Appellant,*

v.

DENNIS BURKHOLDER,
      *Defendant-Appellee.*

No. 08-50446

D.C. No.
2:08-cr-00099-GW-
1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
November 4, 2009—Pasadena, California

Filed January 8, 2010

Before: Myron H. Bright* Harry Pregerson, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

607

## COUNSEL

Thomas P. O'Brien, United States Attorney, Christine C. Ewell, Assistant United States Attorney, and Anne M. Voigts (argued), Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant.

James W. Spertus (argued), Los Angeles, California, for the defendant-appellee.

## OPINION

BRIGHT, Circuit Judge:

In June 2008, appellee Dennis Burkholder pleaded guilty to a single count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The plea agreement contemplated a sentence of 41 months. At sentencing, the district court struck several written victim impact statements attached to the presentence investigation report (PSR), granted Burkholder a downward variance because of his poor health, and imposed a 30-month sentence.

The government appeals the sentence, asserting the district court procedurally erred when it struck the victim impact statements from the PSR thereby denying the victims their right to be reasonably heard under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, and violating Rule 32 of the Federal Rules of Criminal Procedure (Rule 32). We affirm for the following reasons: (1) the right to be reasonably heard does not require that written victim impact statements remain attached to the PSR that is forwarded to the prison authorities and (2) the district court did not violate Rule 32.

## I.  Background and Procedural History

Between November and December 2006, Burkholder purchased subscriptions to at least two commercial internet sites that offered child pornography to their members. Law enforcement discovered Burkholder's memberships and obtained a search warrant for his home. Burkholder cooperated with the search, telling the agents that he downloaded the pictures to his computer and deleted the pictures after saving many on compact discs. In total, Burkholder possessed more than 600 images of child pornography. In January 2008, a federal grand jury indicted Burkholder, charging him with one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Burkholder pleaded guilty pursuant

to a plea agreement, and the court ordered preparation of a PSR before the September 2008 sentencing hearing.

The PSR was disclosed on August 6, 2008, and included summaries of two written victim impact statements (the letters). Although the PSR stated that copies of the letters were attached to the PSR, copies of the letters were included only with the PSR sent to the district court. And though the PSR mentioned two letters, the district court received five letters in total, none of which Burkholder received before sentencing.

At the outset of the sentencing hearing, the district court indicated its intent to strike the letters from the PSR:

> The Probation Report also includes . . . these letters. Frankly, I don't know what they're for. They're not related to this particular case. And I looked at them. And they're a little confusing. The court would strike the letters.

The government responded that the letters were authored by children depicted in the images Burkholder possessed. The government explained that a number of the images found on Burkholder's computer matched children known through a database at the National Center for Missing and Exploited Children.

Burkholder moved to strike the letters as generic and because he had not seen them. The district court expressed concern with the letters' detailed descriptions of harm caused by the abuse, not just the harm suffered when a person was found possessing images of the abuse. The court stated that the letters concerned conduct unrelated to the defendant and that it was obvious that the children would be distressed by the images Burkholder possessed. The government responded that it submitted the letters because victims have a statutory right to be heard.

The district court struck the letters from the PSR. The court stated it understood that child pornography is not a victimless crime, but nonetheless concluded:

> I don't think it necessitates the addition of the letters themselves in the probation report . . . . [I]t seems that [the letters] add[ ] a[n] element, which I guess isn't really applicable aside from just the basic argument that you make in regards to the fact of victim harm . . . . So, I will strike the attached letters.

Later in the sentencing hearing, in response to Burkholder's request for a mechanism to ensure that the letters were struck from the PSR, the court stated, "When I say I'm striking it, . . . I am excluding the letters from the report . . . . so they are not included in the materials that are sent to the prison . . . ."

After hearing argument about whether Burkholder's health should affect his sentence, the district court varied from the guidelines and the 41-month sentence contemplated in the plea agreement, and imposed a 30-month sentence followed by fifteen years of supervised release. The government timely appeals the sentence, arguing the district court violated the victims' rights under the CVRA and erred under Rule 32. The government seeks a remand for a resentencing and to allow the written victim impact statements to be reattached to the PSR.

## II.   Discussion

### A.   The Crime Victims' Rights Act

The government argues the district court denied the victims their right under the CVRA to be reasonably heard when it struck the letters from the PSR. Whether the statutory right to be reasonably heard requires the continuing attachment of written victim impact statements to a PSR is a matter of first

impression and one of statutory interpretation. We review matters of statutory interpretation de novo. *United States v. Lincoln*, 277 F.3d 1112, 1113 (9th Cir. 2002).

The CVRA makes crime victims participants in the criminal process. *Kenna v. U.S. Dist. Ct.*, 435 F.3d 1011, 1013 (9th Cir. 2006). It establishes eight different rights held by crime victims and allows both the government and the victim to enforce those rights. *Id.* (citing 18 U.S.C. § 3771(a), (d)(1)). The right at issue here provides that crime victims have "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4). The CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . . In the case of a crime victim who is under 18 years of age . . . family members . . . may assume the crime victim's rights." *Id.* § 3771(e).

The government first argues that children portrayed in pornographic images are the crime victims of those who possess or distribute the pornographic images, and therefore have rights under the CVRA. We consider this argument.

Burkholder agrees that the authors of the letters had the right to be reasonably heard at his sentencing. He asserts, however, the district court's actions did not violate the authors' rights under the CVRA. Additionally, the district court recognized that the children depicted in the images Burkholder possessed were victims of Burkholder's crime. Thus, no dispute exists here that the letter writers qualify as crime victims. Here the record reflects that the district court read and considered the letters. Thus, in fact, the sentencing judge heard those crime victims to the extent that he could do so in this case.

The further question here is whether the CVRA required continuing attachment of the letters to the PSR or, said

another way, prohibited the district court from striking the letters from the PSR during the sentencing hearing.

**[1]** We first examine the language of the CVRA and observe that the CVRA does not define the "right to be reasonably heard." The right simply provides crime victims the "right to be reasonably heard at any public proceeding" involving sentencing. *Id.* § 3771(a)(4). Nothing in the statute plainly requires appending written victim impact statements to a PSR.

**[2]** Nor does the government's position find support in the CVRA's legislative history. That history suggests that Congress was concerned with ensuring that crime victims be allowed to speak at proceedings:

> It is not the intent of the term "reasonably" in the phrase "to be reasonably heard" to provide any excuse for denying a victim the right to appear in person and directly address the court. *Indeed, the very purpose of this section is to allow the victim to appear personally and directly address the court.* This section would fail in its intent if courts determined that written, rather than oral communication, could generally satisfy this right. *On the other hand, the term "reasonably" is meant to allow for alternative methods of communicating a victim's views to the court when the victim is unable to attend the proceedings.* . . . In short, the victim of crime, or their counsel, should be able to provide any information, as well as their opinion, directly to the court concerning the release, plea, or sentencing of the accused. This bill intends for this right to be heard to be an independent right of the victim.

> It is important that the "reasonably be heard" language not be an excuse for minimizing the victim's opportunity to be heard. *Only if it is not practical for*

*the victim to speak in person or if the victim wishes to be heard by the court in a different fashion should this provision mean anything other than an in-person right to be heard.*

150 Cong. Rec. S10910, S10911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl) (emphasis added). This statement by one of the CVRA's primary sponsors explains that the CVRA provides victims the opportunity to communicate directly to the district court; it does not specifically require a district court to append a written statement to a PSR. Here, the victims chose to exercise their right by submitting written victim impact statements, which, as we have noted, were examined and considered by the district court.

Moreover, our decision in *Kenna* does not support the government's position. *Kenna* concerned a district court's denial of a victim's request to speak at sentencing. 435 F.3d at 1013-14. This court held that the "right to be reasonably heard" means that "the district court must hear from the victims, if they choose to speak . . . . Victims now have an indefeasible right to speak, similar to that of the defendant . . . ." *Id.* at 1016. The ruling by the district court that the right does not require attaching written victim impact statements to a PSR comports with *Kenna's* description of the right to be reasonably heard as an "indefeasible right to speak."

**[3]** The action by the district court does not frustrate the objectives of the CVRA as outlined in *Kenna*: (1) ensuring that the district court doesn't discount the impact of the crime on the victims; (2) forcing the defendant to confront the human cost of his crime; and (3) allowing the victim to regain a sense of dignity and respect rather than feeling powerless and ashamed. *Id*. Certainly, a victim can achieve these aims by submitting a written impact statement describing the effects of a defendant's crime. But the efficaciousness of these goals is not furthered by mandating that written victim impact statements be permanently attached to a PSR. In sum,

we find no support for understanding the right to be reasonably heard as necessitating the continuing attachment of written victim impact statements to a PSR.

Here, the victims chose to assert their right to be reasonably heard by submitting written statements. The letters discussed at length the effects of child abuse, not committed by Burkholder, as well as the impact of the pornographic images. The district court considered the letters and determined that much of their content did not relate to Burkholder's acts. The court then struck the letters from the PSR so that they would not be included in the materials sent to the Bureau of Prisons.

**[4]** On this record, we hold that the district court did not violate the right to be reasonably heard by striking the written victim impact statements from the PSR during the sentencing process after reading and considering the letters.

## B.   Rule 32

The government argues the district court violated Rule 32 by striking the victim impact statements from the PSR, asserting that Rule 32 explicitly requires that the PSR include victim impact information. This court reviews a district court's compliance with Rule 32 de novo. *United States v. Baldrich*, 471 F.3d 1110, 1112 (9th Cir. 2006).

**[5]** When Burkholder was sentenced in September 2008, Rule 32 required that a PSR contain "verified information, stated in a nonargumentative style, that assesses the financial, social, psychological, and medical impact on any individual against whom the offense has been committed." Fed. R. Crim. P. 32(d)(2)(B) (2008).[1] Before imposing sentence, a district

---

[1]Amendments to Rule 32 took effect on December 1, 2008. The portion of the rule quoted above now states, "information that assesses any financial, social, psychological, and medical impact on any victim." Fed. R. Crim. P. 32(d)(2)(B). We examine Rule 32 as it existed at Burkholder's sentencing. *See United States v. Thomas*, 355 F.3d 1191, 1200 (9th Cir. 2004) (examining Rule 32 in effect at the time of sentencing).

court must "address any victim of a crime of violence or sexual abuse who is present at sentencing and must permit the victim to speak or submit any information about the sentence." Fed. R. Crim. P. 32(i)(4)(B). A district court must rule on any disputed portion of the PSR or other controverted matter unless it determines that a ruling is unnecessary. Fed. R. Crim. P. 32(i)(3)(B).

Here, the government provided five letters to the district court, two of which were provided to the Probation Office and commented on in the PSR. The PSR explains the sexual abuse the children suffered (which was not perpetrated by Burkholder) and their feelings of embarrassment and continued violation in learning their pictures were on the Internet.[2] Burkholder moved to strike the statements attached to the PSR as generic and because he had no opportunity to view them before sentencing. None of the victims were present at sentencing.

We first address the government's reliance on this court's per curiam decision in *United States v. Santana*, 908 F.2d 506 (9th Cir. 1990). In that case, the court concluded that a district court's consideration of a victim impact statement at sentencing in a non-capital case did not violate the Supreme Court's holding in *Booth v. Maryland*, 482 U.S. 496 (1987). *Santana*, 908 F.2d at 507. A district court's authority to strike matters from the PSR was neither presented nor addressed in *Santana*. Thus, *Santana* is not relevant here.

The government next argues that Rule 32(d)(2)(B) requires that a PSR include information on the impact of the crime on the victim, and Rule 32(i)(4)(B) requires that courts must permit victims to speak or submit information about the sentence. Therefore, argues the government, the district court could not

---

[2] The government asserts that the court struck the paragraphs in the PSR summarizing two of the letters. However, nothing in the sentencing transcript or elsewhere in the appellate record supports that assertion.

strike the letters from the PSR without violating the explicit commands of Rule 32. We disagree.

First, none of the victims were present at sentencing and the victims were permitted to submit information to the district court. Therefore, the district court did not violate Rule 32(i)(4)(B).

Rule 32(i)(3)(B) requires a court to rule on disputed portions of a PSR or other controverted matters, unless the court determines that a ruling is unnecessary. The court followed the requirements of Rule 32(i)(3)(B). The district court found that the letters concerned conduct unrelated to the defendant. However, the court understood that child pornography was not a victimless crime.

**[6]** In support of his motion to strike the letters, defense counsel stated, "these presentence reports follow defendants around for the rest of their lives. They are used for all evaluations." After considering the letters, the court struck them from the PSR, stating, "I am excluding the letters from the report. And so . . . they are not included in the materials that are sent to the prison, et cetera." On this record, the government has not shown that the district court erred under Rule 32.

**[7]** Based on the record in this case, we determine that the sentencing judge did not err. Accordingly, we **AFFIRM**.