BEA, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that we should affirm the district court’s decision to deny Steven Yamashiro’s' motion to withdraw his guilty plea. But I disagree that the district court committed “plain error” when it permitted one victim to allocute without Yamashiro’s preferred counsel present.
The standard of review matters. We must apply plain-error review when, as here, there was no objection lodged in the district court to the claimed error. See Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). The Supreme Court has explained the plain-error standard is a “limitation on appellate authority” that permits reversal in a small set of circumstances where the defendant forfeits his right to contest the district court’s decision but that forfeiture is excused on appeal. See United States v. Olano, 507 U.S. 725, 732-33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The rule is meant to correct “only ‘particularly egregious errors’ ... solely in those circumstances in which a miscarriage of justice would otherwise result.” United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (citations omitted). For the life of me, I cannot see how the absence of counsel for a single victim’s allo-cution rises to that level, especially when counsel had three months either to review a transcript of the allocution or to move to strike the allocution prior to sentencing.
I.
We “cannot properly evaluate a case [under plain-error review] except by viewing such a claim against the entire record.” Young, 470 U.S. at 16, 105 S.Ct. 1038. In that regard, we are not supposed “to extract from episodes in isolation abstract questions of evidence and procedure. To *1239 turn a criminal trial into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution.” Id. (quoting Johnson v. United States, 318 U.S. 189, 202, 63 S.Ct. 549, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring)). For those reasons, a full recitation of the facts is necessary.
Yamashiro pleaded guilty in December 2011 to two counts of wire fraud and one count of money laundering arising out of his sham investment scheme. At the commencement of the sentencing hearing on September 17, 2012, Yamashiro’s counsel, Mark Hathaway, for the first time notified the court that Yamashiro no longer wanted Hathaway to represent him.[1] Hathaway presented the court with a proposed consent order to substitute Jack Conway as Yamashiro’s defense counsel. The district court expressed frustration with the lateness of the request to substitute counsel, it coming nine months after Yamashiro pleaded guilty and on the day of sentencing; further, the Court noted that several victims had travelled to the sentencing hearing specifically to allocute. The district judge found Yamashiro’s request was a “delaying tactic” that was “solely for the purpose of creating a continuance and causing inconvenience to the parties, to the victims, and to the court.” Hathaway notified the district judge that Conway was absent because he was at a hearing at another courthouse. The district judge stated he would continue the hearing for 30 days.
Before court adjourned, the prosecutor asked if the victims could allocute. The district judge agreed: “I do not want this to be a wasted trip for any of the victims. Let’s do this. I would like to hear from as many as wish to speak.” The district judge then excused Hathaway. After the government noted it may be improper to permit the victims to allocute without counsel present, the district court decided in an “exercise of caution” to have Hathaway remain with Yamashiro during the allocutions. The district judge told Hathaway, “You don’t have, to do anything. I just want to have a full house here while we listen to the victims.” The first victim, Glenn Hale, took the stand and explained how Yamashiro duped him and his wife into investing with Yamashiro, the effect the lost investments had on his life and marriage, and his wish that Yamashiro be imprisoned. Conway arrived after Hale’s allocution. The district court then excused Hathaway, who conferred with Conway off the record before exiting the courtroom. Conway did not seek a recess for purposes of conferring with his client, Yamashiro, with respect to Hale’s allocution. Conway did not ask for a read-back of Hale’s allo-cution. The remaining victims allocuted with Conway present. However, instead of sentencing Yamashiro, the district court continued the sentencing hearing to give Conway the opportunity to get up to speed on the case.
The continued sentencing hearing was ultimately held three months later. During that time, Conway could have ordered and reviewed a transcript of Hale’s allocution, though apparently he did not do so.[2] At the sentencing hearing, Hale allocuted again, though his allocution was shorter, and he repeated his wish that Yamashiro be imprisoned for his crimes.- At the end of the hearing, the district judge sentenced Yamashiro to 189 months imprisonment.
*1240 II.
Neither Hathaway nor Conway ever filed a motion to strike Hale’s first allocution or otherwise objected to that allocution. We therefore review for plain error. Puckett, 556 U.S. at 135, 129 S.Ct. 1423. That review has four prongs. “First, there must be an error or defect.” Id. “Second, the legal error must be clear or obvious, rather than subject to reasonable dispute.” Id. “Third, the error must have affected the appellant’s substantial rights, which in the ordinary case means he must demonstrate that it ‘affected the outcome of the district court proceedings.’ ” Id. (citation omitted).[3] “Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error — discretion which ought to be exercised only if the error ‘seriously affects the fairness, integrity or public reputation of judicial proceedings.’ ” Id. (emphasis in original) (citation omitted).
The majority flatly states that Yamashi-ro satisfies the fourth element in a single line: “We are also satisfied that the denial of counsel seriously affected the fairness, integrity or public reputation of the judicial proceedings.” I cannot agree for several reasons. To start, it is not even clear the district court denied Yamashiro his right to counsel during Hale’s allocution because Hathaway remained with Yama-shiro during that allocution. To that end, the district court found Yamashiro’s request to change counsel from Hathaway to Conway was a “delaying tactic” that was “solely for the purpose of creating a continuance and causing an inconvenience to the parties, to the victims and to the court.” Because of that finding, it is likely the district court would not have erred if it denied Yamashiro’s request for new counsel and proceeded immediately to sentencing with Hathaway as counsel. “The Sixth Amendment grants criminal defendants a qualified constitutional right to hire counsel of their choice but the right is qualified in that it may be abridged to serve some ‘compelling purpose.’ ” United States v. Walters, 309 F.3d 589, 592 (9th Cir.2002) (emphasis added). A defendant’s exercise of the right cannot “unduly hinder the fair, efficient and orderly administration of justice.” Id.; see also United States v. Maness, 566 F.3d 894, 896 (9th Cir.2009) (exercising the Sixth Amendment right to counsel cannot have the “purpose of delay.”). Had the district court denied Ya-mashiro’s request, he simply would have prevented Yamashiro from “unduly hindering] the fair, efficient and orderly administration of justice,” which is a valid reason for denying such a request. Walters, 309 F.3d at 592; see also United States v. D’Amore, 56 F.3d 1202, 1204 (9th Cir.1995) (“[A] compelling purpose may be found when granting the motion would lead to a delay in the proceedings and the Government’s interest in the prompt and efficient administration of justice outweighs the defendant’s need for new counsel to adequately defend himself.”), overruled on other grounds by United States v. Garrett, 179 F.3d 1143 (9th Cir.1999) (en banc).
Unfortunately, the record is unclear on whether the district court granted Yama-shiro’s motion immediately, and relieved Hathaway permanently, or waited to grant the motion and to relieve Hathaway until Conway arrived. The district judge stated, “I have the substitution, and I will sign it. I am going to relieve [Hathaway] as *1241 counsel of record.” The district judge then relieved Hathaway. But in his next breath the judge asked Hathaway to remain so there was a “full house here while we listen to the victims.” And Hathaway stayed with Yamashiro during Hale’s allo-cution. The district court excused Hathaway only after Conway arrived. At that point, the district judge reiterated that he wanted counsel with Yamashiro during each allocution: “I have already relieved Mr. Hathaway, but we are hearing from the various victims of your new client’s numerous schemes. And I wanted in an exercise of an abundance of caution, I wanted counsel to be seated with him.” Conway responded, “Yes, of course,” after which the judge told Hathaway he could leave. The better course would have been for the district court either to deny or grant Yamashiro’s motion or otherwise make clear whether Hathaway was acting as Yamashiro’s counsel until Conway arrived. The district judge’s statements instead (unintentionally) obfuscated the issue. In any event, it is undisputed that Hathaway was present and able to observe Hale’s allocution, which undercuts the argument that the error “seriously affects the fairness, integrity or public reputation of judicial proceedings.”[4] Puckett, 556 U.S. at 135, 129 S.Ct. 1423 (citation omitted).
Further, there is nothing Conway could have done to alter Hale’s allocution had he been present because defense counsel has virtually no role to play during victim allo-cutions. The Crimes’ Victim Rights Act (“CVRA”) gives victims the “right to be reasonably heard at any public proceeding in the district court involving ... sentencing.” Kenna v. U.S. Dist. Court for C.D. Cal., 435 F.3d 1011, 1016 (9th Cir.2006) (quoting 18 U.S.C. § 3771(a)(4)). A “district court must hear from the victims, if they choose to speak” because the “CVRA gives victims the right to confront every defendant who has wronged them.” Id. at 1016-17 (emphasis added). The CVRA does not limit the substance of victims’ allocutions, and even grants victims the right to file a mandamus action against the district court to enforce their right to be heard. See id.; 18 U.S.C. § 3771(d)(3). The Federal Rules of Criminal Procedure likewise require that any victim who wishes to allocute be given the opportunity to do so. Fed.R.Crim.P. 32(i)(4)(B) (“Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.”). And all information is relevant to sentencing: “No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.” 18 U.S.C. § 3661. For these reasons, Hale’s allocution proceeded in exactly the same way as it would have had Conway been present.
Finally, though Conway missed Hale’s allocution, he had plenty of time to learn the substance of that allocution prior to sentencing. After the remaining victims allocuted in Conway’s presence, the district court continued the sentencing, which ultimately occurred three months later. During that delay, Conway could have ordered and reviewed a transcript of Hale’s allocution and incorporated its substance into his sentencing argument. True, Con *1242 way lost the opportunity to be present for Hale’s allocution; he could not consult with Yamashiro during the allocution or observe the effect, if any, Hale’s allocution may have had on the district judge. But that is no different than when a victim chooses to submit victim-impact letters instead of appearing in person. See United States v. Burkholder, 590 F.3d 1071, 1075 (9th Cir.2010) (explaining a victim can be heard by “submitting a written impact statement describing the effects of a defendant’s crime.”). Conway’s absence during Hale’s first allocution is similar to counsel’s absence yvhen the judge reads letters from victims in chambers. And, in any event, Conway could have learned of Hale’s demeanor and the district judge’s reaction to Hale’s allocution by speaking with Hathaway. If Conway could not reach Hathaway, Conway, of course, could have moved to strike Hale’s allocution entirely; he never did.[5]
III.
In view of the facts of this case, I cannot see how the alleged error “ ‘seriously affects the fairness, integrity or public reputation of judicial proceedings.’ ” Puckett, 556 U.S. at 135, 129 S.Ct. 1423 (citation omitted). Yamashiro attempted to delay proceedings, had an attorney with him during the allocution, and his new attorney had the opportunity to review that allocution prior to sentencing. The error, to the extent there was one, does not meet the standard for reversal under plain-error review. At the very least, this is not a case where we should exercise our discretion to remedy the error below. Id.
I do not mean to imply the deprivation of counsel is a minor violation; it isn’t minor. But we should correct errors on plain-error review “solely in those circumstances in which a miscarriage of justice would otherwise result.” Young, 470 U.S. at 15, 105 S.Ct. 1038 (citations omitted). This is no such case.
I respectfully dissent.

. Notwithstanding Yamashiro and his new counsel, Jack Conway, had consented to the substitution a week earlier.

. During oral argument, Yamashiro's appellate counsel stated Conway could have obtained a transcript of Hale’s allocution but did not do so.

. We have held the third prong is similar to the harmless-error analysis and is satisfied when, as here, the alleged error is structural. See United States v. Collins, 684 F.3d 873, 881 (9th Cir.2012) ("[I]f the plain error was a structural one, the existence of prejudice is generally presumed.”); Robinson v. Ignacio, 360 F.3d 1044, 1061 (9th Cir.2004) (explaining the deprivation of counsel at sentencing is structural error).

. The district judge did tell Hathaway, "You don’t have to do anything.” But the court’s statement was likely a recognition that defense counsel has no meaningful role to play while a victim allocutes, as I explain below, rather than a formal statement that Hathaway was not to continue serving as Yamashiro’s counsel. Indeed, when Conway arrived, the district court likewise instructed him to “sit and listen.”

. I note that in similar circumstances we have found there was no error at all. See United States v. Rice, 776 F.3d 1021 (9th Cir.2015). In Rice, the district court appointed the defendant, Shawn Rice, counsel at his arraignment, but Rice requested to represent himself, as was his right under the Sixth Amendment. Id. at 1023. The district court refused to conduct a Faretta hearing that day, and did not conduct the Faretta hearing and grant Rice’s motion to proceed pro se until four months later. Id. at 1023-24. In the interim, Rice filed several pro se motions the district court struck because of a local rule that prohibits pro se filings from represented parties. Id. at 1024. After the district court granted Rice’s request to proceed pro se, the district court permitted Rice to refile his previously stricken motions and Rice represented himself through trial. Id. On appeal, the panel explained "the district court should have taken up the self-representation request more expeditiously.” Id. at 1025. But the panel found "no Sixth Amendment violation in this record as a whole” because the “district court reset the game clock [at the Faretta hearing], placing Rice in the same situation as would have obtained had the [] judge granted the Faretta motion at the ... arraignment.” Id.
Though not directly on point, the rule in Rice is relevant here. Yamashiro contends his right to counsel was violated at the first hearing because Hale allocuted without Conway present. But the district judge continued the hearing, which permitted Conway to review Hale’s allocution before the judge sentenced Yamashiro. Then, Hale allocuted a second time, this time before Conway. Conway was therefore able to incorporate Hale’s first allocution into his sentencing argument just as if he were present at that allocution. In effect, the "district court reset the game clock”; Yamashiro was placed "in the same situation as would have obtained had” the court waited for Conway to arrive prior to Hale's first allocution. Rice, 776 F.3d at 1026.